**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CHARLOTTE AUTOMOTIVE CENTER SALES, LLC | ) | CASE NO. 22-30043 |
| | ) | CHAPTER 11 |
| Debtor. | ) | |
| | ) | |

**MOTION FOR APPROVAL OF SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES; AND FOR AUTHORITY TO PAY DEBT SECURED BY DEEDS OF TRUST**

**COMES NOW** the Debtor, Charlotte Automotive Center Sales, LLC (hereinafter "CACS"), by and through counsel, and moves the Court pursuant to the applicable provisions of Title 11 of the United States Code, including specifically Section 11 U.S.C. 363, to enter its order approving the sale of real property (described below) free and clear of all liens, claims, interests and encumbrances pursuant to the contract identified below.  In support of this motion, CACS would show the Court the following:

1. CACS is a North Carolina limited liability corporation having been formed on 21 October 2011.

2. Theresa Finocchio (a/k/a Balaouras) is the sole member/manager of CACS.

3. CACS became the owner of certain real property located in Mecklenburg County, North Carolina having an address of 6149 East Independence Boulevard (hereinafter "the Property") pursuant to a North Carolina deed dated 19 March 2021, said deed being from Zygos Sevens, LLC, an affiliated predecessor of CACS.

4. The deed transferring the Property to CACS dated 18 March 2021 is recorded in the Mecklenburg County Registry on 19 March 2021 at Book 35822, Page 372.

5. The predecessors to CACS as owners of the Property executed two (2) Deeds of Trust encumbering the Property, the first Deed of Trust being in favor of Yadkin Valley Bank and Trust Company, said Deed of Trust being recorded on 22 July 2011 at Book 26621, Page 156, Mecklenburg County Registry, securing an original indebtedness of $200,000.00.

6. On or about 25 January 2018 a second Deed of Trust encumbering the Property was executed, said second Deed of Trust being in favor of First National Bank of Pennsylvania, said Deed of Trust being recorded on 8 February 2018 in Book 32452, Page 452, Mecklenburg County Registry, securing an original indebtedness of $124,000.00.

7. On 28 January 2022 the Debtor filed this voluntary Chapter 11 case.

8. At the time of the filing of this Chapter 11 case, the Property was occupied by an entity known as U. S. Tires & Auto, LLC, a North Carolina limited liability corporation.

9. The occupancy by U. S. Tires & Auto, LLC is, at best, a tenancy-at-will.

10. This Chapter 11 Debtor is a single-asset real estate entity.

11. At the time of the filing of this Chapter 11 case, the Property was subject to a foreclosure action by First National Bank.

12. During the foreclosure process, there were several upset bids placed for the Property.

13. Upon information and belief, the highest upset bid was approximately $405,000.00.

14. The Debtor has received an offer for the purchase of the Property, which the Debtor has accepted (subject to approval of the Court) for a purchase price of $450,000.00, said purchaser being RJS Properties, Inc.

15. A copy of the Agreement for the Purchase of Real Property is attached hereto and incorporated by reference.

16. Pursuant to the terms of the Agreement, there is no financing contingency.

17. The Agreement, as set forth in its terms, is subject to approval by this Court, and is also subject to the current occupant having vacated the Property.

18. The Agreement for the sale of the Property provides that closing shall occur on the later of fifteen (15) days after the expiration of the inspection period (which is 15 days from the date of execution) or approval of the sale by the U. S. Bankruptcy Court.

19. The Debtor believes in its business judgment that the contract is the best and highest offer that it will receive for the Property, as the contract also calls for no financing contingency and is a cash deal.

20. The agreement is the result of an arms-length negotiation between the buyer and the Debtor, and the buyer has no relationship to this Debtor.

21. The buyer is a good faith purchaser of the Property, without any connection to the Debtor and as such the provisions of 11 U.S.C. 363(m) apply.

22. The Debtor believes that the current occupant will agree to vacate the Property on a reasonable basis, as the parties are negotiating in good faith as to when the current occupant can vacate the Property.

23. The Debtor will also involve the purchaser in the negotiations concerning the date of vacation of the Property, so that perhaps closing can occur even if the occupant is unable to vacate the premises by the closing date.

24. At closing, the Debtor would propose to pay all normal and customary closing costs including the cost of revenue stamps, and prorated taxes.

25. The only additional fee to be paid by the Debtor will be the counsel fees in connection with the transaction, which are subject to approval by this Court in this Chapter 11 case.

26. At closing the Debtor would also propose to pay the debt secured by the two (2) Deeds of Trust identified above, and the Debtor and the lender will hopefully reach agreement as to the amount of that debt prior to closing.

27. In the event that the Debtor and the secured lender are unable to agree on the amount to be paid to the secured lender, pursuant to the applicable provisions of 11 U. S. C. Section 363, the liens of the secured creditor will attach to the proceeds in the same priority as said liens were attached to the Property, as a purchase price of $450,000.00 is believed to be approximately $200,000.00 more than the payoff to the secured creditor.

28. In the event that agreement cannot be reached as to the amount to be paid to the secured creditor, the Debtor will seek hearing before the Court on shortened notice to determine the amount owed to said secured creditor, to be paid as soon as possible.

29. Other than the two (2) Deeds of Trust identified above, and the occupancy claim of U. S. Tires, the Debtor is unaware of any other party having a specific claim, lien, or encumbrance as to the Property.

30. The purchase price of $450,000.00 is greater than the aggregate value of all liens on the Property.

31. The occupancy claim of U. S. Tires is an alleged interest that is in bona fide dispute, as there is pre-petition litigation involving that question.

**WHEREFORE,** the Debtor, CACS, prays that the Court enter its order as follows:

1. Approving the sale of the Property as identified above to RJS Properties, Inc. pursuant to the terms of the contract attached hereto;

2. Approving the sale pursuant to Section 363 to be free and clear of all liens, claims, interests and encumbrances, as all of the requirements of Section 363(f) have been met;

3. Authorizing the Debtor to pay normal and customary closing costs including prorated taxes, and revenue stamps;

4. Authorizing the Debtor to pay, at closing, the secured claim of First National Bank to the extent that the parties agree to said amount. To the extent that there is a dispute as to the amount owed to First National Bank, the agreed amount would be paid at closing, with the disputed amount to be later determined by this Court, upon shortened notice, if necessary;

5. Authorizing the Debtor to execute any and all necessary documents, including a North Carolina Special Warranty Deed, to convey the Property to RJS Properties, Inc;

6. Determining that the purchaser, RJS Properties, Inc. is a good faith purchaser and that the provisions of 11 U.S.C. Section 363(m) apply in this case.

This the 11th day of March, 2022.

> */s/ R. Keith Johnson*
> R. Keith Johnson (Bar No. 8840)
> Attorney for Charlotte Automotive
> Center Sales, LLC
> 1275 Highway 16 South
> Stanley, NC 28164
> (704)-827-4200

## AGREEMENT FOR THE PURCHASE OF REAL PROPERTY

THIS AGREEMENT FOR THE PURCHASE OF REAL PROPERTY (hereinafter referred to as this "Agreement") is made and entered into as of the ___9th___ day of __March__, 2022, by and between RJS PROPERTIES, INC., a North Carolina corporation ("Buyer"), and CHARLOTTE AUTOMOTIVE CENTER SALE, LLC, a North Carolina limited liability company ("Seller").

### WITNESSETH:

WHEREAS, Seller is the owner of that certain tract of land of approximately .268 acres and a 3,500 square foot vacant building with an address of 6149 E. Independence Blvd., Charlotte, North Carolina, located in Mecklenburg County, North Carolina, and more particularly described on **EXHIBIT "A"** attached hereto and incorporated herein by reference, together with all easements and rights benefiting said land (hereinafter referred to collectively as the "Property"); and

WHEREAS, Buyer desires to purchase and Seller desires to sell the Property; and

WHEREAS, the parties are desirous of entering into this Agreement for the purchase of the Property according to and subject to the terms, conditions and provisions hereinafter set forth; and

NOW, THEREFORE, for and in consideration of the covenants, agreements and promises herein contained and Ten and No/100 ($10.00) Dollars paid by Buyer to Seller and for other good and valuable considerations, the receipt, adequacy and sufficiency of which are hereby expressly acknowledged by the parties hereto, Seller and Buyer, intending to be legally bound hereby, do hereby covenant and agree as follows:

ARTICLE I

PURCHASE AND EXCHANGE

1.0 **Effective Date.** The Effective Date of this Agreement shall be the date upon which this Agreement is fully executed by both Buyer and Seller.

1.1 **Agreement for the Purchase of Real Property.** Buyer hereby agrees to purchase the Property from Seller, and Seller hereby agrees to convey the Property to Buyer, on the terms and conditions hereinafter set forth.

1.2 **Tax Free Exchange.** Both parties acknowledge that either party may utilize one or more exchanges pursuant to Section 1031 of the Internal Revenue Code in the exchange of the Property and both parties agree to execute any documents or instruments necessary to complete such a transaction, provided that: (a) the exchange does not delay the Closing under this Agreement, (b) the non-exchanging party does not incur any additional liability as a result of its cooperation, and (c) the non-exchanging party is not required to enter into any contract to purchase any other property, or take title to any property other than the Property. The party requesting the tax-free exchange will pay any and all additional fees associated with structuring the sale as a tax-free exchange.

1.3 **Purchase Price.** The Purchase Price for the Property shall be Four Hundred Fifty Thousand and no/100 Dollars ($450,000.00). The Purchase Price shall be payable in full at Closing in cash or by wire transfer of immediately available federal funds.

1.4 **Earnest Money.** Within three (3) business days after the Effective Date, Buyer shall deposit with Miller & Hall, P.A. (the "Escrow Agent") the sum of Ten Thousand and No/100 ($10,000.00) Dollars in good funds, either by certified bank or cashier's check or by wire transfer (the "Earnest Money"). If Buyer terminates this Agreement during the Inspection Period, then this Agreement shall



become null and void and the Escrow Agent shall promptly refund the Earnest Money to Buyer. The purchase contemplated hereby shall be consummated on the Closing Date provided for in Section 4.1 hereof and all Earnest Money shall be credited towards the payment of the Purchase Price.

1.5    U.S. Bankruptcy Appeal. As set forth in Article IV, the sale of the Property is conditioned on the approval by the U.S. Bankruptcy Court. If for whatever reason, the sale is not approved by the U.S. Bankruptcy Court, this Agreement will be null and void, the Earnest Money will be returned to Buyer and neither party will have any rights or obligations under this Agreement.

## ARTICLE II

## TITLE AND SURVEY

2.1    Title Examination, Commitment for Title Insurance. Buyer shall have until the expiration of the Inspection Period (the "Title Examination Period") to examine title to the Property. During the Title Examination Period, Buyer shall obtain at Buyer's expense, a title insurance commitment (the "Title Commitment") covering the Property, showing all matters affecting title to the Property and binding the Title Company to issue at Closing an ALTA Policy of Title Insurance in the full amount of the Purchase Price pursuant to Section 2.4 hereof.

2.2    Survey. Buyer may, at Buyer's expense, employ a reputable surveyor or surveying firm, licensed by the State of North Carolina, to survey the Property and deliver to Buyer during the Inspection Period a ALTA survey and plat thereof (the "Survey") reflecting the total area of the Property, and the location of all improvements, if any.

2.3    Title Objections: Cure of Title Objections.

(a) Buyer shall have until the expiration of the Title Examination Period to give written notice to Seller of objections to any exceptions disclosed in the Title Commitment, any amendments thereto issued during the Title Examination Period or the Survey. If Buyer fails to deliver its notice of title objections in a timely manner, then Buyer shall be deemed to have accepted all matters of record as of the effective date of the title commitment (or, if Buyer has failed to obtain a title commitment, as of the last day of the Title Examination Period), and all such matters shall be deemed Permitted Exceptions. Time is of the essence.

(b)    Seller may remedy, or agree to remedy prior to the Closing, Buyer's title objections to the reasonable satisfaction of Buyer and its title insurer by delivering a notice to that effect within five (5) business days after its receipt of Buyer's notice of title objections. If Seller does not timely deliver a written response indicating that it will cure or remedy all of the title objections set forth in Buyer's notice of title objections, then Buyer may either: (i) accept title to the Property subject to such exceptions, without adjustment to the Purchase Price or (ii) terminate this Agreement. Upon such termination, the Earnest Money shall be returned to Buyer by the Escrow Agent and neither party hereto shall have any further rights, obligations or liabilities hereunder. Seller shall have no obligation to remedy any of Buyer's title objections other than those monetary liens which are removable by the payment of an objectively ascertainable amount such as a deed of trust or assessment lien.

(c)    To terminate this Agreement pursuant to this Section 2.3, Buyer must give written notice to Seller of its election to terminate not later than five (5) business days after receipt of written notice from Seller of Seller's response to Buyer's title objections.

2.4    Conveyance of Title. At Closing, Seller shall convey and transfer to Buyer, by special warranty deed, such title to the Property as will enable the Title Company to issue to Buyer, at Buyer's expense, an ALTA Policy of Title Insurance (the "Title Policy") covering the Property, in the full amount of the



Purchase Price without exception other than Permitted Exceptions. Notwithstanding anything contained herein to the contrary, the Property shall be conveyed subject to the following matters, which shall be deemed to be Permitted Exceptions:

(a) The lien of all ad valorem real estate taxes and assessments not yet due and payable as of the date of Closing, or payable, but not yet delinquent;

(b) local, state and federal laws, ordinances or governmental regulations, including but not limited to, building and zoning laws, ordinances and regulations, now or hereafter in effect relating to the Property;

(c) easements for utilities and road rights of way serving the Property; and

(d) items which are, or become, Permitted Exceptions pursuant to Sections 2.3 or 2.5 hereof.

2.5 <u>Amendments to Title Commitment</u>. Buyer shall have the right to object to any title exceptions first recorded or arising as an encumbrance to Seller's title after the effective date of the Title Commitment by giving written notice of those exceptions to which Buyer is objecting within ten (10) days after Buyer's receipt of any amendment to the Title Commitment including such exception. If Buyer does not object to any exception first raised in an amendment to the Title Commitment issued after Buyer's receipt of the Title Commitment by giving timely written notice as herein provided, such exception shall be a Permitted Exception. In the event Buyer gives timely written notice of objection to any exception as herein provided, the provisions of Section 2.3 shall apply with respect thereto as if set forth herein in full. Time is of the essence with respect to the provisions of this Section 2.5.

## ARTICLE III

### INSPECTION PERIOD

3.1 <u>Right of Inspection</u>. On or before Fifteen (15) days from the Effective Date, Buyer shall have the right to: (a) make a physical inspection of the Property and, (b) conduct environmental studies, feasibility studies, accessibility, and similar matters, and (c) any and all other inspections, examinations or investigations that Buyer may elect to make or have made that would aid Buyer to determine the feasibility of Buyer using the Property as desired or determined by Buyer in its discretion. Buyer understands and agrees that any on-site inspections of the Property shall be conducted in a manner as will not create any damage to the Property, and shall be subject to the rights of any Tenant under a Lease. Buyer agrees to indemnify against and hold Seller and any Tenant harmless from any claim for liabilities, costs, expenses (including reasonable attorneys fees actually incurred) damages or injuries arising out of or resulting from the inspection of the Property by Buyer or its agents, and notwithstanding anything to the contrary in this Agreement, such obligation to indemnify and hold Seller and any Tenant harmless shall survive Closing or any termination of this Agreement. All inspections shall occur at reasonable times agreed upon by Seller and Buyer and shall be conducted so as not to interfere unreasonably with use of the Property by any Tenant prior to Closing.

3.2 <u>Right of Termination</u>. For any reasons whatsoever, within Buyer's sole discretion, and at any time during the Inspection Period, Buyer may terminate this Agreement and all Buyer's obligations hereunder by giving written notice to Seller. Upon such termination by Buyer, the Escrow Agent shall promptly refund all Earnest Money to Buyer and thereafter, neither party shall have any further obligations hereunder to the other, except as provided in Section 3.1 and Section 7.1. In addition, Buyer shall return to Seller all due diligence items provided by Seller.



ARTICLE IV

CONDITIONS TO CLOSING

The Seller's and Buyer's obligations under this Agreement are conditioned on the following:

(1) Approval by the U.S. Bankruptcy Court for the sale of this property free and clear of all liens, claims, encumbrances, including any claims of the current Tenant, U.S. Tire.

(2) The current Tenant (U.S. Tire) having vacated the property (or waiver by Buyer).

ARTICLE V

CLOSING

5.1 Closing. The Closing of the sale of the Property shall occur the later of Fifteen (15) days after the expiration of the Inspection Period or approval of the sale by the U.S. Bankruptcy Court.. At the Closing, Seller and Buyer shall perform the obligations set forth in, respectively, Section 5.2 and Section 5.3, the performance of which obligations shall be concurrent conditions.

5.2 Seller's Obligations at Closing. At or prior to Closing, Seller shall:

(a) deliver to Buyer a duly executed special warranty deed (the "Deed") in recordable form conveying marketable title to the Property, subject only to the Permitted Exceptions;

(b) deliver to the Title Company such evidence as the Title Company and/or Buyer's counsel may reasonably require as to the authority of the person or persons executing documents on behalf of Seller;

(c) deliver to Buyer an affidavit duly executed by Seller stating that Seller is not a "foreign person" as defined in the Federal Foreign Investment in Real Property Tax Act of 1980 and the 1984 Tax Reform Act;

(d) deliver to Buyer possession and occupancy of the Property, subject only to the Permitted Exceptions;

(e) deliver an Owner's affidavit affirming that Seller has not caused labor tobe performed on the Real Property and Improvements within one hundred twenty (120) days prior to the Closing Date; nor is it aware of any such labor within one hundred twenty (120) days prior to the Closing Date.

(f) deliver to Buyer the Closing Statement;

(g) deliver and assign to Buyer any warranties or contracts affecting the Property;

(h) deliver such additional documents as shall be reasonably required to consummate the transaction contemplated by this Agreement including, but not limited to, any consent to the exchange agreement required by Buyer's qualified intermediary as necessary for the closing procedure to qualify the closing of this transaction as a tax deferred exchange under the Code, if needed.

5.3 Buyer's Obligations at Closing. At Closing, Buyer shall:



(a) pay to Seller the full amount of the Purchase Price of the Property, in cash, wire transfer or other immediately available funds pursuant to Section 1.3 above, it being agreed that at Closing;

(b) deliver to Seller such evidence as Seller's counsel and/or the Title Company may reasonably require as to the authority of the person or persons executing documents on behalf of Buyer;

(c) deliver to Seller the Closing Statement; and

(d) deliver such additional documents as shall be reasonably required to consummate the transaction contemplated by this Agreement including, but not limited to, any consent to the exchange agreement required by Seller's qualified intermediary as necessary for the closing procedure to qualify the closing of this transaction as a tax deferred exchange under Section 1031 of the Code, if needed.

5.4    Prorations. As of the date of Closing ad valorem taxes for the year of Closing shall be prorated on a calendar year basis. Furthermore, any other expenses applicable to the Property shall be prorated as of the Closing Date, including, without limitation, property owners' association assessments.

5.5    Closing Costs. Seller shall pay: (a) the fees of counsel representing it in connection with this transaction, (b) the North Carolina deed stamps required in connection with the recording of the Deed, (c) any cost incurred in curing title objections that Seller has agreed to cure, and Buyer shall pay: (a) the fees of counsel representing Buyer in connection with this transaction; (b) the fee for the title examination and the Title Commitment and the premium for the ALTA Policy of Title Insurance to be issued to Buyer by the Title Company; (c) any other recording fees for the Deed, (d) any expenses relative to any due diligence performed by Buyer relative to this transaction and/or the Property, including but not limited to the cost of the Survey, phase I environmental study and (e) any expenses associated with any mortgage financing obtained by Buyer. All other costs and expenses incident to this transaction and the closing thereof shall be paid by the party incurring same.

ARTICLE VI

REPRESENTATIONS, WARRANTIES AND COVENANTS

6.1    Representations and Warranties of Seller. Seller hereby makes the following representations and warranties to Buyer as of the Effective Date:

(a) Authority. Seller has the full right and authority to enter into this Agreement and to transfer all of the Property to be conveyed by Seller pursuant hereto. The person signing this Agreement is authorized to do so and this Agreement constitutes the valid and binding obligation of Seller.

(b) Pending Actions. Other than the pending Chapter 11 bankruptcy action, the pending foreclosure by the current lender and a lawsuit filed by the current Tenant, to Seller's knowledge, there is no action, suit, arbitration, unsatisfied order or judgment, governmental investigation or proceeding pending against Seller, the Property or the transaction contemplated by this Agreement, which, if adversely determined, could individually or in the aggregate have a material adverse effect on title to the Property or any portion thereof or which could in any material way interfere with the consummation by Seller of the transaction contemplated by this Agreement.

(c) Environmental. To the best of Seller's knowledge, the Property does not contain any Hazardous Substances (as hereinafter defined) nor is the Property otherwise contaminated with any chemicals or toxic substances, which if present, in or on the Property, would require removal or reclamation. As used herein, "Hazardous Substances" means all hazardous or toxic materials,



substances, pollutants, contaminants, or wastes currently identified as a hazardous substance or waste in the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (commonly known as "CERCLA"), as amended, the Superfund Amendments and Reauthorization Act (commonly known as "SARA"), the Resource Conservation and Recovery Act (commonly known as "RCRA"), or any other federal, state or local legislation or ordinances applicable to the Property.

The representations and warranties of Seller set forth in this Section 6.1 shall survive Closing for a period of six (6) months.

6.2   Representations and Warranties of Buyer. Buyer hereby represents and warrants to Seller:

(a)   Buyer has the full right, power and authority to purchase the Property as provided in this Agreement and to carry out Buyer's obligations hereunder, and all requisite action necessary to authorize Buyer to enter into this Agreement and to carry out its obligations hereunder have been, or by the Closing will have been, taken. The person signing this Agreement on behalf of Buyer is authorized to do so.

(b)   There is no action, suit arbitration, unsatisfied order or judgment, government investigation or proceeding pending against Buyer which, if adversely determined, could individually or, in the aggregate materially, interfere with the consummation of the transaction contemplated by this Agreement.

6.3   Property Conveyed "AS IS."   Except as expressly set forth in this Agreement, the Property is being sold and conveyed "As Is" and "with all faults" and Seller has not made, does not make, and hereby disclaims any and all express or implied representations and warranties: (a) regarding or relating to the condition, suitability for any particular purpose, susceptibility to flooding, value, marketability, zoning of the Property, or (b) with respect to use and occupancy restrictions, compliance with environmental laws and laws and regulations relating to hazardous substances, toxic wastes and underground storage tanks, and all legal requirements affecting or relating to the Property. Buyer acknowledges that, except as expressly set forth in this Agreement, no such representations or warranties, express or implied, have been made. The terms and covenants of this Section 6.3 shall survive the Closing and the delivery of the deed for the Property or any termination of this Agreement.

ARTICLE VII

DEFAULT

7.1   Default by Buyer. If Buyer fails to perform any of its obligations under this Agreement for any reason other than Seller's default or the permitted termination of this Agreement by either Seller or Buyer as herein expressly provided, Seller shall be entitled, as its sole remedy, to terminate this Agreement and receive the Earnest Money from the Escrow Agent as liquidated damages for the breach of this Agreement, it being agreed between the parties hereto that the actual damages to Seller in the event of such breach are impractical to ascertain and the amount of the Earnest Money is a reasonable estimate thereof.

7.2   Default by Seller. In the event that Seller fails to perform any of its obligations under this Agreement for any reason other than Buyer's default or the permitted termination of this Agreement by Seller or Buyer as herein expressly provided, Buyer shall be entitled, as its sole remedy, all other rights, recourse and remedies being waived hereby, either: (a) to receive a return of the Earnest Money from the Escrow Agent, which return shall operate to terminate this Agreement and release Seller from any and all liability hereunder, or (b) to enforce specific performance of Seller's obligations to do all things reasonably necessary to, execute the documents required by this Agreement and, to convey marketable title to the Property to Buyer, and if Buyer is successful in such specific performance action, Seller shall



be responsible for the payment of all costs associated with the action, including reasonable attorney fees.

## ARTICLE VIII

## COMMISSIONS

8.1 <u>Brokerage Commissions</u>. Each party hereto hereby represents and warrants to the other that they have not involved a real estate agent or other broker or sales representative in this transaction. Each party agrees that should any claim be made for brokerage commissions or finder's fees by any broker or finder by, through or on account of any acts of said party or its representatives, said party will indemnify and hold the other party free and harmless from and against any and all loss, liability, cost, damage and expense in connection therewith. The provisions of this Section 8.1 shall survive closing or any earlier termination of this Agreement.

## ARTICLE IX

## MISCELLANEOUS

9.1 <u>Notices</u>. Any notice pursuant to this Agreement shall be given in writing by (a) personal delivery, or (b) reputable overnight delivery service with proof of delivery, or (c) United States Mail, postage prepaid, registered or certified mail, return receipt requested, or (d) email transmission sent to the address set forth below, or to such other address as designated by written notice sent in accordance herewith, and shall be deemed to have been given either at the time of personal delivery, or, in the case of expedited delivery service or mail, as of the date of first attempted delivery at the address and in the manner provided herein, or, in the case of email transmission, as of the date of the email transmission so long as the intended recipient acknowledges receipt. Unless changed in accordance with the preceding sentence, the addresses for notices given pursuant to this Agreement shall be as follows:

If to Seller:	Charlotte Automotive Center Sales, LLC
Attn: R. Keith Johnson, Esq.
1275 S. NC 16 Bus. Hwy.
Stanley, NC 28164
Email: kjgrumpy@bellsouth.net
Phone: 704-827-4200

If to Buyer:	RJS Properties, Inc.
Attn: Robert J. Sweeney, Jr.
2730 Rozzelles Ferry Road, Ste. A
Charlotte, NC 28208
Email: bob@rjsproperties.com
Phone: 704-365-2152



and, with a copy to:    Miller & Hall, P.A.
Attn: Leslie H. Miller
216 N. McDowell Street, Ste. 106
Charlotte, NC 28204
Email: les@millerandhall.com
Phone: 704-375-8007 ext. 12

9.2    Modifications. This Agreement cannot be changed orally, and no executory agreement shall be effective to waive, change, modify or discharge it in whole or in part unless such executory agreement is in writing and is signed by the parties against whom enforcement of any waiver, change, modification or discharge is sought.

9.3    Successors and Assigns. The terms and provisions of this Agreement are to apply to and bind the permitted successors and assigns of the parties hereto. Buyer shall have the right to assign this Agreement, and its rights hereunder, without the necessity of obtaining the prior consent of Seller, only to: (a) any entity that is controlled by Buyer (including but not limited to a joint venture in which Buyer is, directly or indirectly, a manager or managing general partner), that controls Buyer or that is under common control with Buyer, or (b) a "Qualified Intermediary" to facilitate the completion of a tax-free exchange of properties by Buyer as contemplated in Section 1.2. No other assignment of Buyer's rights under this Agreement shall be permitted without first obtaining Seller's written consent, which may be granted, withheld or conditioned in Seller's sole discretion.

9.4    Entire Agreement. This Agreement, including the Exhibits, contains the entire agreement between the parties pertaining to the subject matter hereof and fully supersedes all prior written or oral agreements and understandings between the parties pertaining to such subject matter.

9.5    Further Assurances. Each party agrees that it will without further consideration execute and deliver such other documents and take such other action, prior to Closing, as may be reasonably requested by the other party to consummate more effectively the purposes or subject matter of this Agreement.

9.6    Electronic Signature and Counterparts. The parties consent to execution of this Agreement and related documents by electronic means and transmittal of it in the same fashion, and consent that such electronic signatures shall be binding on the parties hereto in all respects. The final closing documents will be executed and delivered in original executed form. This Agreement may be executed in counterparts, and all such executed counterparts shall constitute the same agreement. It shall be necessary to account for only one such counterpart in proving this Agreement.

9.7    Severability. If any provision of this Agreement is determined by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Agreement shall nonetheless remain in full force and effect.

9.8    Applicable Law. This Agreement is performable in the state of North Carolina and shall in all respects be governed by, and construed in accordance with, the substantive federal laws of the United States and the laws of such state.

9.9    No Third Party Beneficiary. The provisions of this Agreement and of the documents to be executed and delivered at Closing are and will be for the benefit of Seller and Buyer only and are not for the benefit of any third party, and accordingly, no third party shall have the right to enforce the provisions of this Agreement or of the documents to be executed and delivered at Closing.

9.10    Exhibits and Schedules. The following schedules or exhibits attached hereto shall be deemed to be an integral part of this Agreement:



Exhibit A – Legal Description

9.11    Captions.  The section headings appearing in this Agreement are for convenience of reference only and are not intended, to any extent and for any purpose, to limit or define the text of any section or any subsection hereof.

9.12    Time of the Essence.  Time is of the essence in the execution and performance of this Agreement and of each of its provisions.

9.13    No Recording or Filing.  Neither this Agreement nor a memorandum thereof shall be recorded by Seller or Buyer.

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement as of the Effective Date.

BUYER:

**RJS PROPERTIES, INC.,**
a North Carolina corporation

By: _____[signature]_____
Robert J. Sweeney, Jr., President

Date Executed by Buyer: __3-9-2022__


SELLER:

**CHARLOTTE AUTOMOTICE CENTER SALES, LLC,**
a North Carolina limited liability company


By: _____

Date Accepted by Seller: _____

Exhibit A – Legal Description

9.11  Captions.  The section headings appearing in this Agreement are for convenience of reference only and are not intended, to any extent and for any purpose, to limit or define the text of any section or any subsection hereof.

9.12  Time of the Essence.  Time is of the essence in the execution and performance of this Agreement and of each of its provisions.

9.13  No Recording or Filing.  Neither this Agreement nor a memorandum thereof shall be recorded by Seller or Buyer.

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement as of the Effective Date.

BUYER:

RJS PROPERTIES, INC.,
a North Carolina corporation


By:_____
    Robert J. Sweeney, Jr., President

Date Executed by Buyer: _____


SELLER:

CHARLOTTE AUTOMOTICE CENTER SALES, LLC,
a North Carolina limited liability company

By: _[signature]_

Date Accepted by Seller: 3/9/22

**EXHIBIT "A"**

**Legal Description**

BEGINNING at a point in the northeast margin of Independence Boulevard (US Highway 74), said beginning point being located at the westernmost corner of the property conveyed by J. Walton Hill, Jr. and wife, Shirley N. Hill by deed recorded in Book 4027 at Page 686 in the Mecklenburg Public Registry, and running thence with the northeast margin of Independence Boulevard right-of-way, North 34-27 West 65 feet 4 inches, to a point, thence North 55-37 East 180 feet to a point, thence South 04-27 East 65 feet, 4 inches to a point, thence with the J. Walton Hill, Jr. and wife line (now or formerly), South 55-37 West 180 feet to the point or place of BEGINNING.



# UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| CHARLOTTE AUTOMOTIVE CENTER SALES, LLC | )  CASE NO. 22-30043 |
| | )  CHAPTER 11 |
| Debtor. | ) |
| | ) |

**NOTICE OF OPPORTUNITY FOR HEARING**
(No Protest Notice: No Hearing Will Be Held Unless Request For Hearing is Filed)

**TAKE NOTICE** that Charlotte Automotive Center Sales, LLC has filed a MOTION FOR APPROVAL OF SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES; AND FOR AUTHORITY TO PAY DEBT SECURED BY DEEDS OF TRUST with the Court. A copy of that motion is included with this notice or copied on the reverse side of this notice.

**Your rights may be affected.** You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one.

If you do not want the court to order the relief sought in the motion, or if you want the court to consider your views on the motion, then on or before **twenty-one (21) days** from the date of this notice, you or your attorney must do three things:

1. **File a written response with the court requesting that the court hold a hearing and explaining your position. File the response at:**

    Charles R. Jonas Federal Building
    401 W. Trade St., Room 111
    Charlotte, NC 28202

If you mail your request to the court for filing, you must mail it early enough so the court will receive it on or before the date stated above.

2. **On or before the date stated above for written responses, you must also mail or fax a copy of your written request to:**

    R. Keith Johnson
    Law Office of R. Keith Johnson, P.A.
    1275 S. NC Bus. Hwy. 16
    Stanley, NC 28164

    Shelley Abel
    U. S. Bankruptcy Administrator
    402 W. Trade St.
    Charlotte, NC 28202

3.      **Attend the hearing scheduled for April 6, 2022 at 9:30 a.m. in LTB Courtroom 2A at the Charles R. Jonas Federal Building, 401 W. Trade Street, Charlotte, North Carolina.**

If you or your attorney do not take these steps, **A HEARING WILL NOT BE HELD,** and the court may decide that you do not oppose the relief sought in the motion and may enter an order granting that relief.

This the 11th day of March, 2022.

>                              */s/ R. Keith Johnson*
>                              R. KEITH JOHNSON
>                              1275 S. NC Bus. Hwy. 16
>                              Stanley, NC 28164
>                              (704) 827-4200
>                              NCSB #8840

**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | |
| **CHARLOTTE AUTOMOTIVE CENTER SALES, LLC** | ) | **CASE NO. 22-30043** |
| | ) | **CHAPTER 11** |
| **Debtor.** | ) | |
| | ) | |

**CERTIFICATE OF SERVICE**

**THIS IS TO CERTIFY** that on the below date, the undersigned served a copy of the MOTION FOR APPROVAL OF SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES; AND FOR AUTHORITY TO PAY DEBT SECURED BY DEEDS OF TRUST and Notice of Opportunity for Hearing for same either electronically or by depositing, enclosed in a postpaid wrapper, properly addressed to the following parties in interest, at their last known addresses as shown below, <u>and to the entire creditor matrix,</u> in a post office or official depository under the exclusive care and custody of the United States Postal Service:

Charlotte Automotive Center Sales, LLC
6149 E. Independence Blvd.
Charlotte, NC 28212

Shelley Abel (ECF)
Bankruptcy Administrator

This the 11th day of March, 2022.

> */s/ R. Keith Johnson*
> R. KEITH JOHNSON
> 1275 S. NC Bus. Hwy. 16
> Stanley, NC 28164
> (704) 827-4200
> NCSB #8840

| | | |
|---|---|---|
| Label Matrix for local noticing<br>0419-3<br>Case 22-30043<br>Western District of North Carolina<br>Charlotte<br>Fri Mar 11 15:57:37 EST 2022 | Charlotte Automotive Center Sales, LLC<br>1275 S. NC 16 Bus. Hwy.<br>Stanley, NC 28164-8822 | Essex Richards<br>1701 South Blvd.<br>Charlotte, NC 28203-4727 |
| Estate of Spiros Balaouras<br>4549 Farm Lake Dr.<br>Myrtle Beach, SC 29579-6599 | First National Bank of Pennsylvania<br>c/o Hutchens Law Firm LLP<br>6230 Fairview Road, Suite 315<br>Charlotte, NC 28210-3151 | First National Bank of Pennsylvania<br>c/o W. Walt Pettit, Esq.<br>6230 Fairview Rd., Ste. 315<br>Charlotte, NC 28210-3151 |
| First National Bank of Pennsylvania<br>c/o William F. Kirk<br>1515 Mockingbird Ln., Ste. 4115<br>Charlotte, NC 28209-1170 | Internal Revenue Service<br>P.O. Box 7317<br>Philadelphia, PA 19101-7317 | (c)R. KEITH JOHNSON<br>1275 S NC 16 BUSINESS HWY<br>STANLEY NC  28164-8822 |
| Manuel Ahumada<br>c/o Jeffrey McCraw, Esq.<br>Crisp Cherry McCraw, PLLC<br>615 S. College St., Ste. 1430<br>Charlotte, NC 28202-3354 | Mecklenburg County Tax Collector<br>P.O. Box 31457<br>Charlotte, NC 28231-1457 | North Carolina Department of Revenue<br>Bankruptcy Unit<br>P.O. Box 1168<br>Raleigh, NC 27602-1168 |
| William Walt Pettit<br>Hutchens Law Firm LLP<br>6230 Fairview Road, Suite 315<br>Charlotte, NC 28210-3151 | Theresa Finocchio<br>4549 Farm Lake Dr.<br>Myrtle Beach, SC 29579-6599 | U.S. Bankruptcy Administrator Office<br>402 W. Trade Street<br>Suite 200<br>Charlotte, NC 28202-1673 |
| U.S. Securities Exchange<br>Office of Reorganization<br>950 East Paces Ferry Road, N.E.<br>Suite 900<br>Atlanta, GA 30326-1382 | United States Attorney<br>227 West Trade Street<br>Carillon Bldg, Suite 1700<br>Charlotte, NC 28202-1675 | W. Walt Pettit, Esq.<br>6230 Fairview Rd., Ste. 315<br>Charlotte, NC 28210-3151 |
| Zygos Seven, LLC<br>4549 Farm Lake Dr.<br>Myrtle Beach, SC 29579-6599 | Zygos Sevens, LLC<br>4549 Farm Lake Dr.<br>Myrtle Beach, SC 29579-6599 | |

Addresses marked (c) above for the following entity/entities were corrected
as required by the USPS Locatable Address Conversion System (LACS).

| | |
|---|---|
| R. Keith Johnson<br>1275 South Hwy 16<br>Stanley, NC 28164 | End of Label Matrix<br>Mailable recipients    19<br>Bypassed recipients     0<br>Total                  19 |