UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| IN RE: | CASE NO.: 22-30043 |
| CHARLOTTE AUTOMOTIVE CENTER SALES, LLC, | CHAPTER 11 |
| Debtor. | |

## AMENDED EMERGENCY MOTION TO DISMISS, TO DETERMINE REAL PROPERTY IS NOT PROPERTY OF THE ESTATE AND ALTERNATIVELY FOR RELIEF FROM STAY

First National Bank of Pennsylvania (hereinafter "FNB"), by and through counsel, hereby moves to dismiss the case under 11 U.S.C. § 1112(b)(1) "for cause" to determine that certain real property is not property of the estate and alternatively for relief from stay and respectfully shows as follows:

### PARTIES, JURISDICTION AND VENUE

1. FNB is a national banking association duly organized and operating under the laws of the United States of America, with an office location in Charlotte, North Carolina.

2. The Debtor is a limited liability company with its principal place of business located in Mecklenburg County, North Carolina.

3. The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334 and the "Referral Order" entered herein by the Chief United States District Court Judge for the Western District of North Carolina. The Court also has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 151 and 157(b) in that it is a core proceeding.

4. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

### PART I. FACTUAL BACKGROUND

#### Note #1

5. On or about July 21, 2011, Zygos Seven, LLC executed and delivered to Yadkin Valley Bank and Trust Company, a certain Commercial Promissory Note in the principal sum of $200,000.00 (hereinafter "Note #1"). A true copy of the Note is appended hereto, identified as "Exhibit 1," and the same is incorporated herein by reference.

Payment Guaranty, said Guaranty being executed for the sole purpose of inducing Yadkin Valley Bank and Trust to extend credit to and to transact business with Zygos Seven, LLC. A true copy of the Guaranty is appended hereto, identified as "Exhibit 2," and the same is incorporated herein by reference.

7.    Also on or about February 2, 2015, Zygos Seven, LLC executed and delivered to PBRE, Inc. as Trustee a certain Commercial Real Estate Deed of Trust. The Deed of Trust encumbered the real property located at 6149 E. Independence Blvd, Charlotte, North Carolina (hereinafter "real property"). A true copy of the Deed of Trust is appended hereto, identified as "Exhibit 3," and the same is incorporated herein by reference.

8.    The Deed of Trust was properly filed on July 22, 2011 and recorded in Book 26621 at Page 156 of the Mecklenburg County Public Registry.

9.    Thereafter, Yadkin Valley Bank and Trust Company changed its name to Yadkin Bank.

10.    On July 21, 2016 and October 21, 2016, Zygos Seven, LLC executed and delivered to Yadkin Bank certain Change in Terms Agreements. True copies of the Agreements are appended hereto, identified as "Exhibits 4 and 5," and the same are incorporated herein by reference.

### Note #2

11.    On or about January 25, 2018, the Debtor and Spiros P. Balaouras executed and delivered to FNB a Promissory Note (hereinafter "Note #2") in the original principal sum of $124,000.00. A true copy of the Note is appended hereto, identified as "Exhibit 6," and the same is incorporated herein by reference.

12.    Contemporaneously with the execution of the foregoing Note, Zygos Seven, LLC executed and delivered to FNB a certain Commercial Guaranty, said Guaranty being executed for the sole purpose of inducing FNB to extend credit to and to transact business with the Debtor. A true copy of the Guaranty is appended hereto, identified as "Exhibit 7," and the same is incorporated herein by reference.

13.    Also on or about January 25, 2018, Zygos Seven, LLC executed and delivered to PBRE, Inc. as Trustee a certain Deed of Trust. This Deed of Trust encumbered the same real property as the prior Deed of Trust (Exhibit 3). A true copy of the Deed of Trust is appended hereto, identified as "Exhibit 8," and the same is incorporated herein by reference.

14.    The Deed of Trust was properly filed on February 8, 2018 and recorded in Book 32452 at Page 452 of the Mecklenburg County Public Registry.

### ALLEGATIONS COMMON TO NOTES

15.    FNB is the owner and holder of the Notes, Guarantys, Deeds of Trust and Change in Terms Agreements.

U:\Bankruptcy\First National Bank of PA\Charlotte Automotive Center Sales\Amended Emergency Motion to Dismiss and Alternatively to Determine Real Property is not Property of the Estate.docx

16.    Zygos Seven, LLC, the Debtor and Spiros P. Balaouras are in default under each Note, Deed of Trust, Guaranty and Change in Terms Agreements by failing to pay as agreed, by failing to maintain adequate casualty and liability insurance, by failing to pay ad valorem taxes on a timely basis, the death of Spiros P. Balaouras and by defaulting on other obligations in favor of FNB.

17.    On June 19, 2019, Spiros P. Balaouras passed

18.    Exclusive of attorneys' fees and expenses and Trustee's fees and expenses and after giving the Debtor, Zygos Seven, LLC and Spiros P. Balaouras credit for all payments and other off-sets due them as of September 9, 2020, there was presently owing FNB by the Debtor, Zygos Seven, LLC and the Estate of Spiros P. Balaouras, jointly and severally, as follows:

Note 1
Principal                $60,078.80
Past-due interest        $1,679.60
Late Charges             $420.48

Note 2
Principal                $120,193.90
Past-due interest        $2,155.13
Late Charges             $42.09

19.    Due to the defaults described above, all sums due under each Note were declared immediately due and payable and demand has been made upon Zygos Seven, LLC, the Debtor and Estate of Spiros P. Balaouras for payment of the same.

20.    On or about January 28, 2022, the Debtor (purportedly) filed this proceeding.

## PART II. ESTATE OF SPIROS P. BALAOURAS

21.    Issues with the Estate:  For over two years, FNB has raised issues regarding the assets and liability of Spiros P. Balaouras. These issues included whether a will was executed by Spiros P. Balaouras, what property the decedent owned as the date of his death, who were the members of those limited liability companies of which he had an equity interest, who has the authority to act on behalf of these entities, etc. These issues are set forth in more detail as follows:

(a) On October 21, 2019, Theresa Balaouras qualified as the Personal Representative of the Estate of Spiros P. Balaouras. No further action has been undertaken to date in that estate. In particular, no pleadings or inventories have been filed and the estate purportedly has a net worth of zero. A true copy of the Horry County Case Summary Report which was received approximately two weeks is appended hereto, identified as "Exhibit 9," and the same is incorporated herein by reference.

(b) While a purported Will of Spiros Balaouras has been circulating, it has not been

3

filed with the Horry County Probate Court. FNB can only surmise that the Will is deficient in one or more ways or that the original Will has not been located. Thus, FNB believes that, at this point, Spiros P. Balaouras died intestate.

(c) No efforts have been made since October 31, 2019 to finalize the estate proceeding pending in Horry County. No list of assets has been prepared and thus no one is able to determine what interests were owned, as of date of his death in the Debtor, Zygos Seven, LLC, and Zygos Sevens, LLC. Accordingly while Theresa Finocchio a/k/a Theresa Balaouras has signed a couple of Deeds as "manager/member" and signed various Annual Reports as "manager," there is no factual basis for her to claim an equity interest in any entity or any document which appoints her as a manager.

22.   Authority to act on behalf of various limited liability companies. For approximately two years, FNB has requested documents which show who are the members of the Debtor, Zygos Seven, LLC, and Zygos Sevens, LLC. These included the Operating Agreements and all minutes for all of either entity. The request to the documents filed with the North Carolina Secretary of State, show the following.

(a) The Applications for Certificate of Authority for Zygos Seven, LLC and the Debtor which were filed with the North Carolina Secretary of State note that the members are Spiros Balaouras and Paris Balaouras. Thus, it appears that these individuals have an equity interest in these entities. True copies of the Applications are appended hereto, identified as "Exhibits 10 and 11," and the same are incorporated herein by reference.

(b) With the exception of the Debtor, all of the Zygos Seven entities have been administratively dissolved, revoked or suspended by the North Carolina Secretary of State. The Debtor was recently reactivated by the filing of four Annual Reports which were signed by Theresa Balaouras as member. This still begs the question how did Theresa Balaouras became a manager.

## PART III. TITLE TO REAL PROPERTY

23.   Regarding the real property, Zygos Seven, LLC acquired the real property from First Citizens as Co-Trustee by Deed dated July 21, 2011. Since that time, Zygos Seven, LLC purported to transfer the real property to Zygos Sevens, LLC by Deed dated June 10, 2019. Zygos Sevens, LLC purported to transfer the real property to the Debtor by Deed executed by Theresa Finocchio a/k/a Theresa Balaouras dated March 19, 2021. While the questions of authority of Theresa Balaouras to act on behalf of any entity above noted and of her ownership or equity interest in any entity remain unsolved, the Deeds have other problems. True copies of these Deeds are appended hereto, identified as "Exhibits 12, 13 and 14," and the same are incorporated herein by reference.

24.   The problems with these Deeds are as follows.

(a) The Deed dated June 10, 2019 from Zygos Seven, LLC to Zygos Sevens, LLC

4

was and remains invalid. The North Carolina Secretary of State had previously issued a Notification of Revenue Suspension to Zygos Seven, LLC in October, 2017. A true copy of the Notification issued by the North Carolina Secretary of State regarding Zygos Seven, LLC is appended hereto, identified as "Exhibit 15," and the same is incorporated herein by reference. Pursuant to N.C.G.S. § 105-230(b), any act of an LLC after the suspension of the Articles of Organization is invalid and has no effect. A true copy of §105-230 is appended hereto, identified as "Exhibit 16," and the same is incorporated herein by reference. Thus, the purported Deed from Zygos Seven, LLC to Zygos Sevens, LLC (Exhibit 13) is invalid and Zygos Seven, LLC continues to own the real property.

(b) Deed from Zygos Sevens, LLC to Charlotte Automotive Center Sales, LLC dated March 19, 2021 was purportedly executed by Theresa Balaouras or Theresa Finacchio as Managing Member of Zygos Sevens, LLC. The records maintained by the North Carolina Secretary of State show that Spiros Balaouras continues to be the Manager for Zygos Sevens, LLC. At the time this Deed was executed (Exhibit 14), Zygos Sevens, LLC had been administratively dissolved by the North Carolina Secretary of State. True copies of the Report and Certificate are appended hereto, collectively identified as "Exhibits 17 and 18," and the same are incorporated herein by reference.

## **BASIS FOR RELIEF REQUESTED**

25.    After filing a foreclosure action in 2020 and a civil action in 2021 to recover the balance due on Notes 1and 2, FNB waited approximately two years to sell the real property. After obtaining a Temporary Receiver in state court "for the property" (and not for an entity or person), the Debtor purportedly filed this petition during the ten (10) day upset bid period.

26.    The Debtor has not been able to produce an Operating Agreement. Therefore, the default rules under the North Carolina Limited Liability Company Act govern the management of these entities.

27.    Pursuant to N.C. General Statute § 57D-3-20, following basic management rules apply to the Debtor as follows.

(a) Based on the initial Application, the Debtor is manager-managed [*see* N.C.G.S. § 57D-3-20(a)];

(b) Each member, whoever they are, is a manager [*see* N.C.G.S. §57D-3-20(a)];

(c) Each member has an equal right to participate in the management of the LLC and its business [*see* N.C.G.S. § 57D-3-20(b)]; and

(d) Extraordinary actions taken by the Debtor (such as filling a bankruptcy proceeding or executing a Deed) require the assent of all members [*see*

5

U:\Bankruptcy\First National Bank of PA\Charlotte Automotive Center Sales\Amended Emergency Motion to Dismiss and Alternatively to Determine Real Property is not Property of the Estate.docx

N.C.G.S.§ 57D-3-20(b)].

28.    Although Theresa Balaouras may have authority (and this is disputed) to act on the day-to-day, ordinary business decision of the Debtor (*see* N.C.G.S. § 57D-3-20(c)), filing bankruptcy is not an ordinary business act under North Carolina law. *See Cabernet, at *2.*

29.    Similarly, the Debtor has purported to take action in this case that falls outside of the Debtor's ordinary course of business (*e.g.*, retaining bankruptcy counsel), and presumably will continue to do so (*e.g.*, filing pleading, appearing at various proceedings incidental to this case). The Corporate Resolution (doc.2) filed in this case is signed by Theresa Finocchino a/k/a Theresa Balaouras as the "member manager" or the Debtor. The Debtor cannot take these actions without verification that Theresa Balaouras has an equity interest and has been appointed as member/manager of the Debtor and without the Consent of all Members. In addition, it appears that Paris Balaouras is a member and must assent to the filing.

30.    Pursuant to § 1112(b)(1) of the Code, a bankruptcy court shall, upon request of a party-in-interest, dismiss a chapter 11 bankruptcy case "for cause."

31.    A motion to dismiss pursuant to § 1112(b)(1) is considered a contested matter governed by Rule 9014 of the Federal Rules of Bankruptcy Procedure.

32.    Local Rule 1002-2(d) of the Rules of Practice and Procedure of the United States Bankruptcy Court for the Western District of North Carolina provides that "[w]hen a . . . limited liability company . . . files a voluntary bankruptcy petition, an executed copy of the resolution of the debtor's board of directors, members, or general partners authorizing the filing of the bankruptcy petition shall be filed with the petition."

33.    Cause for dismissing a bankruptcy case under § 1112(b) exists when a chapter 11 filing lacks the requisite corporate authority as a matter of governing state law. *See, e.g., In re Springfield Homes, LLC*, 2013 WL 5425556, at *2 (Bankr. E.D.N.C. Sep. 27, 2013) (dismissing a chapter 11 case under § 1112(b) when the applicable LLC had two managers but only one manager authorized the bankruptcy filing); *In re Cabernet Holdings, LLC*, 2010 WL 2540116, at *2 (Bankr. M.D.N.C. Jun. 21, 2010) (dismissing a chapter 11 case under § 1112(b) when the applicable LLC had two 50/50 members but only one member authorized the bankruptcy filing).

34.    As Judge Whitley recognized in the *J & J Property Holdings, LLC* chapter 11 case, when a petition is not duly authorized under governing state law, the bankruptcy court has no alternative but to dismiss the case. *See J & J Property Holdings, LLC*, 2004 WL 5463804, at *2, Case No. 03-34667 (Bankr. W.D.N.C. Jan. 21, 2004) (*citing Price v. Gurney*, 324 U.S. 100, 106 (1945)).

**PART IV. REQUEST FOR RELIEF**

35.     Upon information and belief, the Debtor has not and currently does not maintain casualty and/or liability insurance insuring the real property with FNB noted as a first mortgage under the policy.

36.     FNB is not being adequately protected by the Debtor's failure to provide casualty and liability insurance.  Based on 11 U.S.C. § 362(d)(1), FNB is entitled to relief from the automatic stay provisions of 11 U.S.C. § 362(a) to foreclose on the real property and otherwise enforce its rights in the same pursuant to the terms of Deed of Trust and N.C. law.

37.     FNB hereby gives notice that it may submit a declaration or affidavit regarding any issue(s) raised in this contested matter in accordance with Rules 803(6), 902(11), and 902(12) of the Federal Rules of Evidence.

WHEREFORE, FNB prays the Court as follows:

1.      That the Court dismiss this case for cause under 11 U.S.C § 1112 (b)(1);

2.      That, alternatively, the Court determine that the Debtor does not own the real property and allow FNB and the Substitute Trustee the right to finalize the foreclosure sale as allowed by law;

3.      That, alternatively, the Court grant FNB relief from the automatic stay provision of 11 U.S.C. § 362(a) to foreclose on the real property and otherwise enforce its rights therein;

4.      That the Court hold a hearing on this Motion; and

5.      That FNB has such other and further relief as to the Court may deem just and proper.

This the 14 day of March, 2022.

HUTCHENS LAW FIRM LLP
Attorneys for First National Bank of Pennsylvania


By:_____
        William Walt Pettit
        N.C. Bar No. 9407
        6230 Fairview Road, Suite 315
        Charlotte, N.C. 28210
        Telephone: (704) 362-9255
        Email: walt.pettit@hutchenslawfirm.com

7

**EXHIBIT**

**COMMERCIAL PROMISSORY NOTE**

**American Community Bank, A Division of Yadkin Valley Bank and Trust Company**
4500 Cameron Valley Parkway
Charlotte, North Carolina 28211
(704)367-5054

| LOAN NUMBER | NOTE DATE | PRINCIPAL AMOUNT | LOAN TERM | MATURITY DATE |
|---|---|---|---|---|
| | July 21, 2011 | $200,000.00 | 60 months | July 21, 2016 |

| LOAN PURPOSE: PURCHASE COMMERCIAL BUILDING |
|---|

**BORROWER INFORMATION**

ZYGOS SEVEN LLC
8410 CRICKET LAKE DRIVE
Charlotte, NC 28277

---

**NOTE.** This Commercial Promissory Note will be referred to in this document as the "Note."

**LENDER.** "Lender" means **American Community Bank, A Division of Yadkin Valley Bank and Trust Company** whose address is **4500 Cameron Valley Parkway, Charlotte, North Carolina 28211** , its successors and assigns.

**BORROWER.** "Borrower" means each person or legal entity who signs this Note.

**PROMISE TO PAY.** For value received, receipt of which is hereby acknowledged, on or before the Maturity Date, the Borrower promises to pay the principal amount of **Two Hundred Thousand and 00/100 Dollars ($200,000.00)** and all interest and any other charges, including service charges, to the order of Lender at its office at the address noted above or at such other place as Lender may designate in writing. The Borrower will make all payments in lawful money of the United States of America.

**PAYMENT SCHEDULE.** This loan will be paid according to the following schedule: 59 consecutive payments of principal and interest in the amount of $1,752.16 beginning on August 21, 2011 and continuing on the same day of each month thereafter. One final balloon payment shall be due on the Maturity Date in an amount equal to the then unpaid principal and accrued and unpaid interest. All payments received by the Lender from the Borrower for application to the Loan may be applied to the Borrower's obligations under the Loan in such order as determined by the Lender.

**INTEREST RATE AND SCHEDULED PAYMENT CHANGES.** The interest rate on this Note will be fixed at 6.500% per annum.

Nothing contained herein shall be construed as to require the Borrower to pay interest at a greater rate than the maximum allowed by law. If, however, from any circumstances, Borrower pays interest at a greater rate than the maximum allowed by law, the obligation to be fulfilled will be reduced to an amount computed at the highest rate of interest permissible under applicable law and if, for any reason whatsoever, Lender ever receives interest in an amount which would be deemed unlawful under applicable law, such interest shall be automatically applied to amounts owed, in Lender's sole discretion, or as otherwise allowed by applicable law. Interest on this Note is calculated on a 365/360 day basis. The unpaid balance of this loan after Maturity, whether by acceleration or otherwise, shall be subject to a post-maturity rate of interest equal to the same fixed or variable rate basis in effect before maturity.

**LATE PAYMENT CHARGE.** If any required payment is more than 15 days late, then at Lender's option, Lender will assess a late payment charge of 4% of the amount past due, subject to a maximum charge of $500.00.

**PREPAYMENT PENALTY.** This Note may be prepaid, in full or in part, at any time, without penalty.

**SECURITY TO NOTE.** Security (the "Collateral") for this Note is granted pursuant to the following security document(s):

- Security Instrument (Mortgage/Deed of Trust/Security Deed) in the amount of $200,000.00, dated July 21, 2011 evidencing a lien on the property located at 6149 INDEPENDENCE BLVD Charlotte NC 28212.

**GUARANTY.** In support of this transaction, a Guaranty dated July 21, 2011 has been executed by SPIROS P BALAOURAS

**RIGHT OF SET-OFF.** To the extent permitted by law, Borrower agrees that Lender has the right to set-off any amount due and payable under this Note, whether matured or unmatured, against any amount owing by Borrower to Lender including any or all of Borrower's accounts with Lender. This shall include all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. Such right of set-off may be exercised by Lender against Borrower or against any assignee for the benefit of creditors, receiver, or execution, judgment or attachment creditor of Borrower, or against anyone else claiming through or against Borrower or such assignee for the benefit of creditors, receiver, or execution, judgment or attachment creditor, notwithstanding the fact that such right of set-off has not been exercised by Lender prior to the making, filing or issuance or service upon Lender of, or notice of, assignment for the benefit of creditors, appointment or application for the appointment of a receiver, or issuance of execution, subpoena or order or warrant.

**DISHONORED ITEM FEE.** If Borrower makes a payment on the loan with a check or preauthorized charge which is later dishonored, a fee in the amount of $34.00 will be charged.

---

**RELATED DOCUMENTS.** The words "Related Documents" mean all promissory notes, security agreements, mortgages, deeds of trust, business loan agreements, construction loan agreements, resolutions, guaranties, environmental agreements, subordination agreements, assignments and any other documents or agreements executed in connection with this Note whether now or hereafter existing. The Related Documents are hereby made a part of this Note by reference thereto, with the same force and effect as if fully set forth herein.

**DEFAULT.** Upon the occurrence of any one of the following events (each, an "Event of Default" or "default" or "event of default"), Lender's obligations, if any, to make any advances will, at Lender's option, immediately terminate and Lender, at its option, may declare all indebtedness of Borrower to Lender under this Note immediately due and payable without further notice of any kind notwithstanding anything to the contrary in this Note or any other agreement: (a) Borrower's failure to make any payment on time or in the amount due; (b) any default by Borrower under the terms of this Note or any other Related Documents executed in connection with this Note; (c) any default by Borrower under the terms of any Related Documents in favor of Lender; (d) the death, dissolution, or termination of existence of Borrower or any guarantor; (e) Borrower is not paying Borrower's debts as such debts become due; (f) the commencement of any proceeding under bankruptcy or insolvency laws by or against Borrower or any guarantor or the appointment of a receiver; (g) any default under the terms of any other indebtedness of Borrower to any other creditor; (h) any writ of attachment, garnishment, execution, tax lien or similar instrument is issued against any collateral securing the loan, if any, or any of Borrower's property or any judgment is entered against Borrower or any guarantor; (i) any part of Borrower's business is sold to or merged with any other business, individual, or entity; (j) any representation or warranty made by Borrower to Lender in any of the Related Documents or any financial statement delivered to Lender proves to have been false in any material respect as of the time when made or given; (k) if any guarantor, or any other party to any Related Documents in favor of Lender entered into or delivered in connection with this Note terminates, attempts to terminate or defaults under any such Related Documents; (l) Lender has deemed itself insecure or there has been a material adverse change of condition of the financial prospects of Borrower or any collateral securing the obligations owing to Lender by Borrower. Upon the occurrence of an event of default, Lender may pursue any remedy available under any Related Document, at law or in equity

**GENERAL WAIVERS.** To the extent permitted by law, the Borrower severally waives any required notice of presentment, demand, acceleration, intent to accelerate, protest and any other notice and defense due to extensions of time or other indulgence by Lender or to any substitution or release of collateral. No failure or delay on the part of Lender, and no course of dealing between Borrower and Lender, shall operate as a waiver of such power or right, nor shall any single or partial exercise of any power or right preclude other or further exercise thereof or the exercise of any other power or right

**JOINT AND SEVERAL LIABILITY.** If permitted by law, each Borrower executing this Note is jointly and severally bound.

**SEVERABILITY.** If a court of competent jurisdiction determines any term or provision of this Note is invalid or prohibited by applicable law, that term or provision will be ineffective to the extent required. Any term or provision that has been determined to be invalid or prohibited will be severed from the rest of this Note without invalidating the remainder of either the affected provision or this Note.

**SURVIVAL.** The rights and privileges of the Lender hereunder shall inure to the benefits of its successors and assigns, and this Note shall be binding on all heirs, executors, administrators, assigns and successors of Borrower.

**ASSIGNABILITY.** Lender may assign, pledge or otherwise transfer this Note or any of its rights and powers under this Note without notice, with all or any of the obligations owing to Lender by Borrower, and in such event the assignee shall have the same rights as if originally named herein in place of Lender. Borrower may not assign this Note or any benefit accruing to it hereunder without the express written consent of the Lender.

**ORAL AGREEMENTS DISCLAIMER.** This Note represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

**GOVERNING LAW.** This Note is governed by the laws of the state of North Carolina except to the extent that federal law controls.

**HEADING AND GENDER.** The headings preceding text in this Note are for general convenience in identifying subject matter, but have no limiting impact on the text which follows any particular heading. All words used in this Note shall be construed to be of such gender or number as the circumstances require.

**ATTORNEYS' FEES AND OTHER COSTS.** If legal proceedings are instituted to enforce the terms of this Note, Borrower agrees to pay all costs of the Lender in connection therewith, including reasonable attorneys' fees, to the extent permitted by law.

**WAIVER OF JURY TRIAL. All parties to this Note hereby knowingly and voluntarily waive, to the fullest extent permitted by law, any right to trial by jury of any dispute, whether in contract, tort, or otherwise, arising out of, in connection with, related to, or incidental to the relationship established between them in this Note or any other instrument, document or agreement executed or delivered in connection with this Note or the related transactions.**

By signing this Note, Borrower acknowledges reading, understanding, and agreeing to all its provisions and receipt hereof.

ZYGOS SEVEN LLC

By: SPIROS P BALAOURAS            Date
Its: Manager

© 2004-2010 Compliance Systems, Inc 9FDE-2B23 - 2010 11 340
Commercial Promissory Note - DL4006

www.compliancesystems.com




**LENDER: American Community Bank, A Division of Yadkin Valley Bank and Trust Company**

By: Jimmy Koutsokalis          Date

Its: Branch Manager




EXHIBIT
2

**UNLIMITED CONTINUING PAYMENT GUARANTY**

Yadkin Valley Bank and Trust Company
4500 Cameron Valley Parkway
Charlotte, North Carolina 28211
(704)367-5054

| GUARANTY DATE | | | |
|---|---|---|---|
| July 21, 2011 | | | |

**GUARANTOR INFORMATION**

SPIROS P BALAOURAS
8408 CRICKET LAKE DRIVE
Charlotte, NC 28277

Type of Entity: Individual
State of Residence: North Carolina

**BORROWER INFORMATION**

ZYGOS SEVEN LLC
8410 CRICKET LAKE DRIVE
Charlotte, NC 28277

Type of Business Entity: Limited Liability Company
State of Organization/Formation: Nevada

**UNLIMITED CONTINUING PAYMENT GUARANTY.** This Unlimited Continuing Payment Guaranty will be referred to in this document as the "Guaranty."

**LENDER.** "Lender" means Yadkin Valley Bank and Trust Company whose address is 4500 Cameron Valley Parkway, Charlotte, North Carolina 28211 , its successors and assigns.

**BORROWER.** "Borrower" means each party identified above to whom Lender has extended credit and financial accommodations.

**LIABILITIES.** "Liabilities" means the undertakings of the Guarantor to the Lender, as specified herein.

**GUARANTOR.** "Guarantor" means the party identified above that is undertaking certain Liabilities to the Lender, as specified herein.

**OBLIGATIONS.** "Obligations" means any and all indebtedness, obligations, and liabilities of the Borrower to the Lender, and all claims of the Lender against the Borrower, now existing or hereafter arising, direct or indirect (including participations or any interest of the Lender in indebtedness of the Borrower to others), acquired outright, conditionally, or as collateral security from another, absolute or contingent, joint or several, secured or unsecured, matured or not matured, monetary or nonmonetary, arising out of contract or tort, liquidated or unliquidated, arising by operation of law or otherwise and all extensions, renewals, refundings, replacements, and modifications of any of the foregoing.

**COLLATERAL.** "Collateral" means any property that secures payment of the Liabilities, and all proceeds thereof.

**NOTICE TO GUARANTOR.** Lender has agreed to extend credit and financial accommodations to Borrower pursuant to a promissory note executed on even date herewith (the "Note"), and all agreements, instruments and documents executed or delivered in connection with the foregoing or otherwise related hereto (together with any amendments, modifications, or restatements thereof, the "Related Documents").

Guarantor is affiliated with Borrower, and as such, shall be benefited directly by the transaction contemplated by the Related Documents, and shall execute this Guaranty in order to induce Lender to enter the transaction.

In consideration of the foregoing premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Guarantor hereby guarantees, promises and undertakes, both jointly and severally, as follows:

**UNLIMITED CONTINUING GUARANTY.** Guarantor hereby unconditionally, absolutely, and irrevocably guarantees to Lender the full and prompt payment and performance when due (whether at the maturity date or by required prepayment, acceleration, or otherwise) of all Obligations of the Borrower to the Lender (notwithstanding the fact that from time to time there may be no indebtedness outstanding), however created, of every kind and description, whether now existing or hereafter arising and whether direct or indirect, due or which may become due, absolute or contingent, primary or secondary, liquidated or unliquidated, whether originated with Lender or owed to others and acquired by Lender by purchase, assignment, or otherwise, and including without limitation all loans, advances, indebtedness and each and every other obligation arising under the Related Documents, and all agreements, instruments and documents evidencing, guarantying, securing or otherwise executed in connection with any of the foregoing, together with any amendments, modifications, and restatements thereof.

This Guaranty is an absolute, present and continuing guaranty of payment that shall remain in full force and effect until all such Obligations shall be fully paid to Lender.

To the extent permitted by law, if any settlement, discharge, payment, grant of security or transfer of property relating to discharging any duty or liability created under or guaranteed by this Guaranty is rescinded or avoided by virtue of any provision of any bankruptcy, insolvency, or other similar law affecting creditors' rights, Lender will be entitled to recover the value or amount of any such settlement, discharge, payment, grant of security or transfer of property from Guarantor as if such settlement, discharge, payment, grant of security or transfer of property had not occurred.

**EXPENSES.** Guarantor hereby agrees, to the extent permitted by law, to pay any and all expenses incurred in enforcing any rights under this Guaranty. Without limiting the foregoing, Guarantor agrees that whenever any attorney is used by the Lender to obtain payment hereunder, to enforce this Guaranty, to adjudicate the rights of the parties hereunder, or to advise the Lender of its rights, the Lender shall be entitled to recover reasonable attorneys' fees, all court costs, and expenses attributable thereto.

**CONSENT.** The Guarantor consents to all extensions, renewals, and modifications made by the Lender for, or on account of, any indebtedness of Borrower to Lender. Lender may proceed directly against Guarantor in the event of any default by Borrower without resorting to any other persons, to the assets of Borrower, to any collateral security granted by Borrower to Lender, or the liquidation of any collateral security given hereunder to secure this Guaranty. Furthermore, to the extent permitted by law, Guarantor hereby agrees and consents that Lender may from time to time without notice to Guarantor and without affecting the liability of Guarantor (a) release, impair, sell or otherwise dispose of any security or collateral, (b) release or agree not to sue any guarantor or surety, (c) fail to perfect its security interest in or realize upon any security or collateral, (d) fail to realize upon any of the obligations of Borrower or to proceed against Borrower or any guarantor or surety, (e) renew or extend the time of payment, (f) increase or decrease the rate of interest, (g) accept additional security or collateral, (h) determine the allocation and application of payments and credits and accept partial payments, (i) determine what, if anything, may at any time be done with reference to any security or collateral, and (j) settle or compromise the amount due or owing or claimed to be due or owing from any Borrower, guarantor or surety, which settlement or compromise shall not affect the undersigned's liability for the full amount of the guaranteed obligations. To the extent permitted by law, Guarantor expressly consents to and waives notice of all of the above.

© 1004-2010 Compliance Systems, Inc. D796-1866 - 2010 09. 181
Unlimited Continuing Payment Guaranty - DL4011

Page 1 of 2

www.compliancesystems.com



**REPRESENTATIONS.** Guarantor has established adequate means of obtaining from sources other than Lender, on a continuing basis, financial and other information pertaining to Borrower's financial condition, and the status of Borrower's performance of obligations imposed by the loan documents, and Guarantor agrees to keep adequately informed from such means of any facts, events or circumstances which might in any way affect Guarantor's risks hereunder, and Lender has made no representation to Guarantor as far as any such matters.

**SUBROGATION.** Notwithstanding any payment or payments made by the Guarantor hereunder, or any set-off or application of the Collateral by the Lender, the Guarantor will not exercise any rights of the Lender against the Borrower, nor shall the Guarantor seek contribution from any other Guarantor until all the Obligations shall have been paid in full. If any amount shall be paid to the Guarantor on account of such subrogation rights at any time when all the Obligations will not have been paid in full, such amount shall be held in trust for the benefit of the Lender and shall forthwith be paid to the Lender to be credited and applied to the Obligations, whether matured or unmatured. If (i) the Guarantor shall make payment to the Lender of all or any part of the Obligations and (ii) all the Obligations shall be paid in full, the Lender will, at the Guarantor's request, execute and deliver to the Guarantor appropriate documents, without recourse and without representation or warranty, necessary to evidence the transfer by subrogation to the Guarantor of an interest in the Obligations resulting from such payment by the Guarantor.

**GENERAL WAIVERS.** Guarantor hereby waives (a) notice of acceptance of this Guaranty and all notice of the creation, extension or accrual of any of the Obligations, (b) diligence, presentment, protest, demand for payment, notice of dishonor, notice of intent to accelerate, and notice of acceleration, (c) notice of any other nature whatsoever to the extent permitted by law, (d) any requirement that the Lender take any action whatsoever against the Borrower or any other party or file any claim in the event of the bankruptcy of the Borrower, or (e) failure to protect, preserve, or resort to any Collateral, and (f) any defense that could be asserted by Borrower, including defenses arising out of failure of consideration, breach of warranty, fraud, payment, statute of frauds, bankruptcy, lack of capacity, statute of limitations, lender liability, unenforceability of any loan document, accord and satisfaction, or usury.

Guarantor, to the extent permitted by law, further waives and agrees not to assert any and all rights, benefits, and defenses that might otherwise be available under the provisions of the governing law that might operate, contrary to Guarantor's agreements in this Guaranty, to limit Guarantor's liability under, or the enforcement of, this Guaranty, including all defenses of suretyship. Guarantor waives any defense that could be asserted by Borrower, including defenses arising out of failure of consideration, breach of warranty, fraud, payment, statute of limitations, lender liability, unenforceability of any loan document, accord and satisfaction, or usury.

**LENDER'S RIGHTS.** Any delay, failure, omission, or lack on the part of the Lender to enforce, assert, or exercise any provision or take any action pursuant to the Related Documents, including any right, power, or remedy conferred on Lender in any of the Related Documents or any action on the part of Lender granting indulgence or extension in any form Guaranty or any Related Documents does not operate as a waiver of the Lender's ability to exercise all of its rights. The Lender may choose to partially exercise rights under this Guaranty and any Related Documents, but that does not prevent the Lender from fully exercising these rights.

**SURVIVAL.** This Guaranty is binding on all heirs, executors, personal representatives, administrators, assigns and successors of the Guarantor.

**ASSIGNABILITY.** The Lender may, without notice, assign the Obligations, in whole or in part, and each successive assignee of the Obligations so assigned may enforce this Guaranty for its own benefit with respect to the Obligations so assigned. In the event that any person other than the Lender shall become a holder of any of the Obligations, the reference to the Lender shall be construed to refer to each such holder.

**RIGHT OF SET-OFF.** To the extent permitted by law, Guarantor gives Lender the right to set-off any of Guarantor's accounts or property which may be in Lender's possession against any amount owed under this Guaranty. This right of set-off does not extend to any Keogh account, IRA, or similar tax deferred deposit. Further, the Lender shall have available all remedies under applicable state and federal laws, including the garnishment of wages, to the extent permitted by law.

**WAIVER OF JURY TRIAL.** All parties to this Guaranty hereby knowingly and voluntarily waive, to the fullest extent permitted by law, any right to trial by jury of any dispute, whether in contract, tort, or otherwise, arising out of, in connection with, related to, or incidental to the relationship established between them in this Guaranty or any other instrument, document or agreement executed or delivered in connection with this Guaranty or the related transactions.

**SEVERABILITY.** If a court of competent jurisdiction determines any term or provision of this Guaranty is invalid or prohibited by applicable law, that term or provision will be ineffective, but only to the extent required to make it lawful. Any term or provision that has been determined to be invalid or prohibited will be severed from the rest of this Guaranty without invalidating the remainder of the provisions of this Guaranty.

**GOVERNING LAW.** This Guaranty shall be governed by and construed in accordance with the laws of the State of North Carolina except to the extent that federal law controls.

**HEADINGS AND GENDER.** The headings in this Guaranty are for convenience in identifying subject matter. The headings have no limiting effect on the text that follows any particular heading. As the context herein requires, the singular shall include the plural and one gender shall include one or both other genders.

**ORAL AGREEMENTS DISCLAIMER.** This Agreement represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

**ACKNOWLEDGMENT.** Guarantor hereby acknowledges that: (a) the Obligations hereunder shall be joint and several; (b) the liabilities undertaken by Guarantor in this Guaranty are complex in nature; and (c) numerous possible defenses to the enforceability of these liabilities may presently exist and/or may arise hereafter. As part of Lender's consideration for entering into this transaction, Lender has specifically bargained for the waiver and relinquishment by Guarantor of all such defenses, and Guarantor has had the opportunity to seek and receive legal advice from skilled legal counsel in the area of financial transactions of the type contemplated herein. Given all of the above, Guarantor does hereby represent and confirm to Lender that Guarantor is fully informed regarding, and that Guarantor does thoroughly understand: (i) the nature of all such possible defenses, and (ii) the circumstances under which such defenses may arise, and (iii) the benefits which such defenses might confer upon Guarantor, and (iv) the legal consequences to Guarantor of waiving such defenses. Guarantor acknowledges that Guarantor makes this Guaranty with the intent that each and all of the informed waivers herein shall each and all be fully enforceable by Lender, and that Lender is induced to enter into this transaction in material reliance upon the presumed full enforceability thereof.

By signing this Guaranty, Guarantor acknowledges reading, understanding, and agreeing to all its provisions.



SPIROS P BALAOURAS          Date
Individually

© 2004-2010 Compliance Systems, Inc. 3708-1866 - 2010 09 161
Unlimited Continuing Payment Guaranty - DL4011

Page 2 of 2          www.compliancesystems.com




EXHIBIT
3

FOR REGISTRATION J. DAVID GRANBERRY
REGISTER OF DEEDS
MECKLENBURG COUNTY, NC
2011 JUL 22 11:00:50 AM
BK 26621 PG 156-162 FEE $45.00
INSTRUMENT # 2011081567

2011081567

| THIS INSTRUMENT PREPARED BY: | AFTER RECORDING RETURN TO: |
|---|---|
| Yadkin Valley Bank and Trust Company | Yadkin Valley Bank and Trust Company |
| PO Box 888 | PO Box 888 |
| Elkin, NC 28621 | Elkin, NC 28621 |

(Space Above This Line For Recording Data)

## COMMERCIAL REAL ESTATE DEED OF TRUST

This COMMERCIAL REAL ESTATE DEED OF TRUST ("Security Instrument") is made on July 21, 2011 by the grantor(s) ZYGOS SEVEN LLC, a Nevada Limited Liability Company, whose address is 8410 CRICKET LAKE DRIVE, Charlotte, North Carolina 28277 ("Grantor"). The trustee is PBRE, Inc. whose address is P.O. Drawer 7109, Statesville, North Carolina 28687 ("Trustee"). The beneficiary is Yadkin Valley Bank and Trust Company whose address is PO Box 888, Elkin, North Carolina 28621 ("Lender"), which is organized and existing under the laws of the State of North Carolina. Grantor in consideration of loans extended by Lender up to a maximum principal amount of **Two Hundred Thousand and 00/100 Dollars ($200,000.00)** ("Maximum Principal Indebtedness"), and for other valuable consideration, the receipt of which is acknowledged, irrevocably grants, conveys and assigns to Trustee, in trust, with power of sale, the following described property located in the COUNTY of MECKLENBURG, State of North Carolina:

Address: 6149 INDEPENDENCE BLVD, Charlotte, North Carolina 28212
Legal Description: See attached Exhibit "A".

Together with all easements, appurtenances abutting streets and alleys, improvements, buildings, fixtures, tenements, hereditaments, equipment, rents, income, profits and royalties, personal goods of whatever description and all other rights and privileges including all minerals, oil, gas, water (whether groundwater, subterranean or otherwise), water rights (whether riparian, appropriate or otherwise, and whether or not appurtenant to the above-described real property), wells, well permits, ditches, ditch rights, reservoirs, reservoir rights, reservoir sites, storage rights, dams and water stock that may now, or at any time in the future, be located on and/or used in connection with the above-described real property, payment awards, amounts received from eminent domain, amounts received from any and all insurance payments, and timber which may now or later be located, situated, or affixed on and used in connection therewith (hereinafter called the "Property").

**RELATED DOCUMENTS.** The words "Related Documents" mean all promissory notes, security agreements, prior mortgages, prior deeds of trust, business loan agreements, construction loan agreements, resolutions, guaranties, environmental agreements, subordination agreements, assignments of leases and rents and any other documents or agreements executed in connection with this Security Instrument whether now or hereafter existing. The Related Documents are hereby made a part of this Security Instrument by reference thereto, with the same force and effect as if fully set forth herein.

**INDEBTEDNESS.** This Security Instrument secures the principal amount shown above as may be evidenced by a promissory note or notes of even, prior or subsequent date hereto, including future advances and every other indebtedness of any and every kind now or hereafter owing from Grantor to Lender, howsoever created or arising, whether primary, secondary or contingent, together with any interest or charges provided in or arising out of such indebtedness, as well as the agreements and covenants of this Security Instrument and all Related Documents (hereinafter all referred to as the "Indebtedness"). This Security Instrument is given wholly or partly to secure future obligations that may be secured hereunder.

**MATURITY DATE.** The Indebtedness, if not paid earlier, shall be due and payable on July 21, 2016.

**FUTURE ADVANCES.** The period in which future advances may be incurred shall not exceed more than 30 years beyond the date of this Security Instrument.

**CROSS COLLATERALIZATION.** It is the expressed intent of Grantor to cross collateralize all of its Indebtedness and obligations to Lender, howsoever arising and whensoever incurred.

**WARRANTIES.** Grantor, for itself, its heirs, personal representatives, successors, and assigns, represents, warrants, covenants and agrees with Lender, its successors and assigns, as follows:




**Performance of Obligations.** Grantor promises to perform all terms, conditions, and covenants of this Security Instrument and Related Documents in accordance with the terms contained therein.

**Defense and Title to Property.** At the time of execution and delivery of this instrument, Grantor is lawfully seised of the estate hereby conveyed and has the exclusive right to mortgage, grant, convey and assign the Property. Grantor covenants that the Property is unencumbered and free of all liens, except for encumbrances of record acceptable to Lender. Further, Grantor covenants that Grantor will warrant and defend generally the title to the Property against any and all claims and demands whatsoever, subject to the easements, restrictions, or other encumbrances of record acceptable to Lender, as may be listed in the schedule of exceptions to coverage in any abstract of title or title insurance policy insuring Lender's interest in the Property.

**Condition of Property.** Grantor promises at all times to preserve and to maintain the Property and every part thereof in good repair, working order, and condition and will from time to time, make all needful and proper repairs so that the value of the Property shall not in any way be impaired.

**Removal of any Part of the Property.** Grantor promises not to remove any part of the Property from its present location, except for replacement, maintenance and relocation in the ordinary course of business.

**Alterations to the Property.** Grantor promises to abstain from the commission of any waste on the Property. Further, Grantor shall make no material alterations, additions or improvements of any type whatever to the Property, regardless of whether such alterations, additions or improvements would increase the value of the Property, nor permit anyone to do so except for tenant improvements and completion of items pursuant to approved plans and specifications, without Lender's prior written consent, which consent may be withheld by Lender in its sole discretion. Grantor will comply with all laws and regulations of all public authorities having jurisdiction over the premises relating to the use, occupancy and maintenance thereof and shall upon request promptly submit to Lender evidence of such compliance.

**Due on Sale - Lender's Consent.** Grantor shall not sell, further encumber or otherwise dispose of, except as herein provided, any or all of its interest in any part of or all of the Property without first obtaining the written consent of Lender. If any encumbrance, lien, transfer or sale or agreement for these is created, Lender may declare immediately due and payable, the entire balance of the Indebtedness.

**Insurance.** Grantor promises to keep the Property insured against such risks and in such form as may within the sole discretion of Lender be acceptable, causing Lender to be named as loss payee or if requested by Lender, as mortgagee. The insurance company shall be chosen by Grantor subject to Lender's approval, which shall not be unreasonably withheld. All insurance policies must provide that Lender will get a minimum of 10 days notice prior to cancellation. At Lender's discretion, Grantor may be required to produce receipts of paid premiums and renewal policies. If Grantor fails to obtain the required coverage, Lender may do so at Grantor's expense. Grantor hereby directs each and every insurer of the Property to make payment of loss to Lender with the proceeds to be applied, only at Lender's option, to the repair and replacement of the damage or loss or to be applied to the Indebtedness with the surplus, if any, to be paid by Lender to Grantor.

**Payment of Taxes and Other Applicable Charges.** Grantor promises to pay and to discharge liens, encumbrances, taxes, assessments, lease payments and any other charges relating to the Property when levied or assessed against Grantor or the Property.

**Environmental Laws and Hazardous or Toxic Materials.** Grantor and every tenant have been, are presently and shall continue to be in strict compliance with any applicable local, state and federal environmental laws and regulations. Further, neither Grantor nor any tenant shall manufacture, store, handle, discharge or dispose of hazardous or toxic materials as may be defined by any state or federal law on the Property, except to the extent the existence of such materials has been presently disclosed in writing to Lender. Grantor will immediately notify Lender in writing of any assertion or claim made by any party as to the possible violation of applicable state and federal environmental laws including the location of any hazardous or toxic materials on or about the Property. Grantor indemnifies and holds Lender harmless from any liability or expense of whatsoever nature incurred directly or indirectly as a result of Grantor's violation of applicable local, state and federal environmental laws and regulations or Grantor's involvement with hazardous or toxic materials.

**Financial Information.** Grantor agrees to supply Lender such financial and other information concerning its affairs and the status of any of its assets as Lender, from time to time, may reasonably request. Grantor further agrees to permit Lender to verify accounts as well as to inspect, copy and to examine the books, records and files of Grantor.

**Lender's Right to Enter.** Lender or Lender's agents shall have the right and access to inspect the Property at all reasonable times in order to attend to Lender's interests and ensure compliance with the terms of this Security Instrument. If the Property, or any part thereof, shall require inspection, repair or maintenance which Grantor has failed to provide, Lender, after reasonable notice, may enter upon the Property to effect such obligation; and the cost thereof shall be added to the Indebtedness and paid on Lender's demand by Grantor.

**ASSIGNMENT OF LEASES AND RENTS.** As additional security for the payment of the Indebtedness and the performance of the covenants contained herein, Grantor hereby assigns and transfers over to Lender all rents,

income and profits ("Rents") under any present or future leases, subleases or licenses of the Property, including any guaranties, extensions, amendments or renewals thereof, from the use of the Property. So long as Grantor is not in default, Grantor may receive, collect and enjoy all Rents accruing from the Property, but not more than one month in advance of the due date. Lender may also require Grantor, tenant and any other user of the Property to make payments of Rents directly to Lender. However, by receiving any such payments, Lender is not, and shall not be considered, an agent for any party or entity. Any amounts collected may, at Lender's sole discretion, be applied to protect Lender's interest in the Property, including but not limited to the payment of taxes and insurance premiums and to the Indebtedness. At Lender's sole discretion, all leases, subleases and licenses must first be approved by Lender.

**CONDEMNATION.** Grantor shall give Lender notice of any action taken or threatened to be taken by private or public entities to appropriate the Property or any part thereof, through condemnation, eminent domain or any other action. Further, Lender shall be permitted to participate or intervene in any of the above described proceedings in any manner it shall at its sole discretion determine. Lender is hereby given full power, right and authority to receive and receipt for any and all damages awarded as a result of the full or partial taking or appropriation and in its sole discretion, to apply said awards to the Indebtedness, whether or not then due or otherwise in accordance with applicable law. Unless Lender otherwise agrees in writing, any application of proceeds to the Indebtedness shall not extend or postpone the due date of the payments due under the Indebtedness or change the amount of such payments.

**GRANTOR'S ASSURANCES.** At any time, upon a request of Lender, Grantor will execute and deliver to Lender, and if appropriate, cause to be recorded, such further mortgages, assignments, assignments of leases and rents, security agreements, pledges, financing statements, or such other document as Lender may require, in Lender's sole discretion, to effectuate, complete and to perfect as well as to continue to preserve the Indebtedness, or the lien or security interest created by this Security Instrument.

**ATTORNEY-IN-FACT.** Grantor appoints Lender as attorney-in-fact on behalf of Grantor. If Grantor fails to fulfill any of Grantor's obligations under this Security Instrument or any Related Documents, including those obligations mentioned in the preceding paragraph, Lender as attorney-in-fact may fulfill the obligations without notice to Grantor. This power of attorney shall not be affected by the disability of the Grantor.

**EVENTS OF DEFAULT.** The following events shall constitute default under this Security Instrument (each an "Event of Default"):

    (a)  Failure to make required payments when due under Indebtedness;
    (b)  Failure to perform or keep any of the covenants of this Security Instrument or a default under any of the Related Documents;
    (c)  The making of any oral or written statement or assertion to Lender that is false or misleading in any material respect by Grantor or any person obligated on the Indebtedness;
    (d)  The death, dissolution, insolvency, bankruptcy or receivership proceeding of Grantor or of any person or entity obligated on the Indebtedness;
    (e)  Any assignment by Grantor for the benefit of Grantor's creditors;
    (f)  A material adverse change occurs in the financial condition, ownership or management of Grantor or any person obligated on the Indebtedness; or
    (g)  Lender deems itself insecure for any reason whatsoever.

**REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default, Lender may, without demand or notice, pay any or all taxes, assessments, premiums, and liens required to be paid by Grantor, effect any insurance provided for herein, make such repairs, cause the abstracts of title or title insurance policy and tax histories of the Property to be certified to date, or procure new abstracts of title or title insurance and tax histories in case none were furnished to it, and procure title reports covering the Property, including surveys. The amounts paid for any such purposes will be added to the Indebtedness and will bear interest at the rate of interest otherwise accruing on the Indebtedness until paid. In the event of foreclosure, the abstracts of title or title insurance shall become the property of Lender. All abstracts of title, title insurance, tax histories, surveys, and other documents pertaining to the Indebtedness will remain in Lender's possession until the Indebtedness is paid in full.

IN THE EVENT OF THE SALE OF THIS PROPERTY UNDER THE PROCEDURE FOR FORECLOSURE OF A SECURITY INSTRUMENT BY ADVERTISEMENT, AS PROVIDED BY APPLICABLE LAW, OR IN THE EVENT LENDER EXERCISES ITS RIGHTS UNDER THE ASSIGNMENT OF LEASES AND RENTS, THE GRANTOR HEREBY WAIVES ANY RIGHT TO ANY NOTICE OTHER THAN THAT PROVIDED FOR SPECIFICALLY BY STATUTE, OR TO ANY JUDICIAL HEARING PRIOR TO SUCH SALE OR OTHER EXERCISE OF RIGHTS.

Upon the occurrence of an Event of Default, Lender may, without notice unless required by law, and at its option, declare the entire Indebtedness due and payable, as it may elect, regardless of the date or dates of maturity thereof and, if permitted by state law, is authorized and empowered to cause the Property to be sold at public auction, and to execute and deliver to the purchaser or purchasers at such sale any deeds of conveyance good and sufficient at law, pursuant to the statute in such case made and provided, and out of the proceeds of the sale to retain the sums then due hereunder and all costs and charges of the sale, including attorneys' fees, rendering any surplus to the party or parties entitled to it. If Lender chooses to invoke the power of sale, Lender or Trustee will provide notice of sale pursuant to applicable law. Any such sale or a sale made pursuant to a judgment or a decree for the foreclosure hereof may, at the option of Lender, be made en masse. The commencement of proceedings to

© 2004-2010 Compliance Systems, Inc. F943-ABB2- 2C1 0.05 365
Commercial Real Estate Security Instrument - DL4009



www.compliancesystems.com



foreclose this Security Instrument in any manner authorized by law shall be deemed as exercise of the above option.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of **0.000%** of the gross sale price; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The interest rate set forth in the Note shall apply whether before or after any judgment on the in Indebtedness evidenced by the Note.

Upon the occurrence of an Event of Default, Lender shall immediately be entitled to make application for and obtain the appointment of a receiver for the Property and of the earnings, income, issue and profits of it, with the powers as the court making the appointments confers. Grantor hereby irrevocably consents to such appointment and waives notice of any application therefor.

**NO WAIVER.** No delay or failure of Lender to exercise any right, remedy, power or privilege hereunder shall affect that right, remedy, power or privilege nor shall any single or partial exercise thereof preclude the exercise of any right, remedy, power or privilege. No Lender delay or failure to demand strict adherence to the terms of this Security Instrument shall be deemed to constitute a course of conduct inconsistent with Lender's right at any time, before or after an event of default, to demand strict adherence to the terms of this Security Instrument and the Related Documents.

**SUBSTITUTE TRUSTEE.** Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

**JOINT AND SEVERAL LIABILITY.** If this Security Instrument should be signed by more than one person, all persons executing this Security Instrument agree that they shall be jointly and severally bound, where permitted by law.

**SURVIVAL.** Lender's rights in this Security Instrument will continue in its successors and assigns. This Security Instrument is binding on all heirs, executors, administrators, assigns and successors of Grantor.

**NOTICES AND WAIVER OF NOTICE.** Unless otherwise required by applicable law, any notice or demand given by Lender to any party is considered effective when it is deposited in the United States Mail with the appropriate postage, mailed to the address of the party given at the beginning of this Security Instrument unless an alternative address has been provided to Lender in writing. To the extent permitted by law, Grantor waives notice of Lender's acceptance of this Security Instrument, defenses based on suretyship, any defense arising from any election by Lender under the United States Bankruptcy Code, Uniform Commercial Code, as enacted in the state where Lender is located or other applicable law or in equity, demand, notice of acceleration, notice of nonpayment, presentment, protest, notice of dishonor and any other notice.

**TO THE EXTENT PERMITTED BY LAW, GRANTOR WAIVES ANY RIGHT TO NOTICE, OTHER THAN THE NOTICE PROVIDED ABOVE, AND WAIVES ANY RIGHT TO ANY HEARING, JUDICIAL OR OTHERWISE, PRIOR TO LENDER EXERCISING ITS RIGHTS UNDER THIS SECURITY INSTRUMENT.**

**WAIVER OF APPRAISEMENT RIGHTS.** Grantor waives all appraisement rights relating to the Property to the extent permitted by law.

**LENDER'S EXPENSES.** Grantor agrees to pay all expenses incurred by Lender in connection with enforcement of its rights under the Indebtedness, this Security Instrument or in the event Lender is made party to any litigation because of the existence of the Indebtedness or this Security Instrument, as well as court costs, collection charges and reasonable attorneys' fees and disbursements.

**ASSIGNABILITY.** Lender may assign or otherwise transfer this Security Instrument or any of Lender's rights under this Security Instrument without notice to Grantor. Grantor may not assign this Security Instrument or any part of the Security Instrument without the express written consent of Lender.

**GOVERNING LAW.** This Security Instrument will be governed by the laws of the State of North Carolina including all proceedings arising from this Security Instrument.

**SEVERABILITY.** If a court of competent jurisdiction determines any term or provision of this Security Instrument is invalid or prohibited by applicable law, that term or provision will be ineffective to the extent required. Any term or provision that has been determined to be invalid or prohibited will be severed from the rest of the Security Instrument without invalidating the remainder of either the affected provision or this Security Instrument.

**WAIVER OF JURY TRIAL.** All parties to this Security Instrument hereby knowingly and voluntarily waive, to the fullest extent permitted by law, any right to trial by jury of any dispute, whether in contract, tort, or otherwise, arising out of, in connection with, related to, or incidental to the relationship established between them in this Security Instrument or any other instrument, document or agreement executed or delivered in connection with this Security Instrument or the related transactions.

 

**ORAL AGREEMENTS DISCLAIMER.** This Security Instrument represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

By signing this Security Instrument, each Grantor acknowledges that all provisions have been read and understood. Signed and sealed by Grantor(s):

ZYGOS SEVEN LLC

X _____   7/21/11

By: SPIROS P BALAOURAS        Date
Its: Manager

Witnessed by:

_____        _____
Name:              Date        Name:              Date

_____        _____

## BUSINESS ACKNOWLEDGMENT

STATE OF       NORTH CAROLINA )
                                )
COUNTY OF      Mecklenburg      )

This is to certify that on the 21st day of July 2011, before me personally came SPIROS P BALAOURAS, Manager for and on behalf of ZYGOS SEVEN LLC, a Nevada Limited Liability Company, with whom I am personally acquainted, and who, being by me duly sworn, did say that he/she holds the position set forth, and the name of the Limited Liability Company was subscribed thereto by SPIROS P BALAOURAS, Manager of ZYGOS SEVEN LLC, all by order of the Manager of the Limited Liability Company, and that the foregoing instrument is the act and deed of the Limited Liability Company.

Witness my hand and official seal, this 21st day of July 2011.

My commission expires: 01-03-2015

Barbara A. Wisler

Identification Number

(Official Seal)

NOTARY PUBLIC
Barbara A. Wisler
My Comm. Exp.
01-03-2015
Union County, N. C.



**EXHIBIT "A'**

**LEGAL DESCRIPTION**

BEGINNING at a point in the northeast margin of Independence Boulevard (U.S. Highway 74), said beginning point being located at the westernmost corner of that property conveyed to J. Walton Hill, Jr. and wife, Shirley N. Hill by deed recorded in Book 4027 at Page 686 in the Mecklenburg Public Registry; and running thence with the northeast margin of Independence Boulevard right-of-way, N. 34-27 w. 65 feet 4 inches, to a point; thence N. 55-37 E. 180 feet to a point; thence S. 04-27 E. 65 feet, 4 inches to a point; thence with the J. Walton Hill, Jr. and wife, line (now or formerly) S. 55-37 w. 180 feet to the point or place of BEGINNING.

Tax parcel number: 165-042-24

Physical address: 6149 E. Independence Blvd. Charlotte NC 28212



EXHIBIT
tabbies
4

*0000007500021437-1096007212016*

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|
| $151,899.50 | 07-21-2016 | 10-21-2016 | 01E1 | | 4265 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** ZYGOS SEVEN LLC
6149 E Independence Blvd
Charlotte, NC 28212

**Lender:** Yadkin Bank
101 W. Main St
Elkin, NC 28621

**Principal Amount: $151,899.50** **Date of Agreement: July 21, 2016**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** Promissory Note dated July 21, 2011 in the original Principal sum of Two Hundred Thousand Dollars and 00/100 ($200,000.00). The Current Principal Balance is One Hundred Fifty One Thousand Eight Hundred Ninety Nine Dollars and 50/100 ($151,899.50).

**DESCRIPTION OF COLLATERAL.**
All collateral securing the Note shall remain as collateral for the Note unless and until expressly released by Lender.

**DESCRIPTION OF CHANGE IN TERMS.** 90 day extension of loan. Upon execution of this agreement the Bank will waive $500.00 in late fees.

**PROMISE TO PAY.** ZYGOS SEVEN LLC ("Borrower") promises to pay to Yadkin Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Hundred Fifty-one Thousand Eight Hundred Ninety-nine & 50/100 Dollars ($151,899.50), together with interest on the unpaid principal balance from July 21, 2016, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 6.500%, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in one principal payment of $151,899.50 plus interest on October 21, 2016. This payment due on October 21, 2016, will be for all principal and all accrued interest not yet paid. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in the loan documents.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Yadkin Bank, 101 W. Main St, Elkin, NC 28621.

**LATE CHARGE.** If a payment is 15 days or more late, Borrower will be charged 4.000% of the unpaid portion of the regularly scheduled payment. This late charge shall be paid to Lender by Borrower to compensate Lender for Lender's extra costs and expenses caused by the late payment.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Agreement will continue to accrue interest at the interest rate under this Agreement. If judgment is entered in connection with this Agreement, interest will continue to accrue after the date of judgment at the rate in effect at the time judgment is entered.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Any guarantor or Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of any guarantor's or Borrower's property or ability to perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

# CHANGE IN TERMS AGREEMENT
## (Continued)

Loan No:                                                                                        Page 2

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Agreement and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Agreement if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of North Carolina without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of North Carolina.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Surry County, State of North Carolina.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Agreement is secured by the following collateral described in the security instrument listed herein: a Mortgage or Deed of Trust to a trustee in favor of Lender on real property located in Mecklenburg County, State of North Carolina.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**PRIOR LOAN AGREEMENT.** This Business Loan Agreement shall supersede and replace in their entirety, any Business Loan Agreement previously entered into by Borrower and Bank, excluding those loan agreements prepared specifically for any construction loan or those loan agreements prepared by counsel to correspond with a specific loan transaction, as maybe amended from time to time.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Agreement on transfer of Borrower's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Borrower, Lender, without notice to Borrower, may deal with Borrower's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Borrower from the obligations of this Agreement or liability under the Indebtedness.

**MISCELLANEOUS PROVISIONS.** If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement. Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. Borrower and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several.

**PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT. BORROWER AGREES TO THE TERMS OF THE AGREEMENT.**

**THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.**

CHANGE IN TERMS SIGNERS:


ZYGOS SEVEN, LLC

By: _____ (Seal)
   Sprios P. Balaouras, Manger of ZYGOS SEVEN LLC


X _____ (Seal)
   Sprios P. Balaouras

LENDER:


YADKIN BANK


X _____
   Jimmy A. Koutsokalis, Branch Manager

---

LaserPro, Ver 19.3.20.036 Copr. D+H USA Corporation 1997, 2019. All Rights Reserved. - NC C:\PLPL\G20C.FC TR-7163 PR-61



EXHIBIT
tabbies
5

*0000007500021437-1096010212016*

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $143,122.39 | 10-21-2016 | 08-21-2021 | | 01E1 | | 4265 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** ZYGOS SEVEN LLC
8410 Cricket Lake Drive
Charlotte , NC 28277

**Lender:** Yadkin Bank
101 W. Main St
Elkin, NC 28621

**Principal Amount: $143,122.39** **Date of Agreement: October 21, 2016**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** Promissory Note dated July 21, 2011 in the original Principal sum of Two Hundred Thousand Dollars and 00/100 ($200,000.00). The Current Principal Balance is One HUndred Forty Three Thousand One Hundred Twenty Two and 39/100 ($143,122.39).

**DESCRIPTION OF COLLATERAL.**
All collateral securing the Note shall remain as collateral for the Note unless and until expressly released by Lender.

**DESCRIPTION OF CHANGE IN TERMS.** Renewal of loan. Upon execution of this agreement the Bank will waive $500.00 in late fees and the Interest Rate is being lowered from Fixed @6.500% to Fixed @ 5.000%.

**PROMISE TO PAY. ZYGOS SEVEN LLC ("Borrower") promises to pay to Yadkin Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Hundred Forty-three Thousand One Hundred Twenty-two & 39/100 Dollars ($143,122.39), together with interest on the unpaid principal balance from October 21, 2016, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 5.000%, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.**

**PAYMENT. Borrower will pay this loan in 53 regular payments of $1,752.16 each and one irregular last payment estimated at $78,462.87. Borrower's first payment is due March 21, 2017, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on August 21, 2021, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.**

**INTEREST CALCULATION METHOD. Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in the loan documents.**

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and Borrower will remain obligated to pay any further amount owed to Lender. **All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Yadkin Bank, 101 W. Main St, Elkin, NC 28621.**

**LATE CHARGE.** If a payment is 15 days or more late, Borrower will be charged 4.000% of the unpaid portion of the regularly scheduled payment. This late charge shall be paid to Lender by Borrower to compensate Lender for Lender's extra costs and expenses caused by the late payment.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Agreement will continue to accrue interest at the interest rate under this Agreement. If judgment is entered in connection with this Agreement, interest will continue to accrue after the date of judgment at the rate in effect at the time judgment is entered.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Any guarantor or Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of any guarantor's or Borrower's property or ability to perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout,

# CHANGE IN TERMS AGREEMENT
## (Continued)

Loan No: _____                                                                      **Page 2**

to Borrower demanding cure of such default:  (1)  cures the default within fifteen (15) days; or  (2)  if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.**  Upon default, Lender may declare the entire unpaid principal balance under this Agreement and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.**  Lender may hire or pay someone else to help collect this Agreement if Borrower does not pay.  Borrower will pay Lender that amount.  This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals.  If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.**  Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.**  This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of North Carolina without regard to its conflicts of law provisions.  This Agreement has been accepted by Lender in the State of North Carolina.

**CHOICE OF VENUE.**  If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Surry County, State of North Carolina.

**DISHONORED ITEM FEE.**  Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.**  To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account).  This includes all accounts Borrower may open in the future.  However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law.  Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.**  Borrower acknowledges this Agreement is secured by the following collateral described in the security instruments listed herein:

(A)   a Mortgage or Deed of Trust to a trustee in favor of Lender on real property described as "Real Property located at 6149 INDEPENDENCE BLVD, CHARLOTTE, NC  28212" and located in Mecklenburg County, State of North Carolina.

(B)   a Mortgage or Deed of Trust to a trustee in favor of Lender on real property described as "Real Property located at 6149 INDEPENDENCE BLVD, CHARLOTTE, NC  28212" and located in Mecklenburg County, State of North Carolina.

**CONTINUING VALIDITY.**  Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect.  Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms.  Nothing in this Agreement will constitute a satisfaction of the obligation(s).  It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing.  Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement.  If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it.  This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**PRIOR LOAN AGREEMENT.**  This Business Loan Agreement shall supersede and replace in their entirety, any Business Loan Agreement previously entered into by Borrower and Bank, excluding those loan agreements prepared specifically for any construction loan or those loan agreements prepared by counsel to correspond with a specific loan transaction, as maybe amended from time to time.

**SUCCESSORS AND ASSIGNS.**  Subject to any limitations stated in this Agreement on transfer of Borrower's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns.  If ownership of the Collateral becomes vested in a person other than Borrower, Lender, without notice to Borrower, may deal with Borrower's successors with reference to this Agreement and the indebtedness by way of forbearance or extension without releasing Borrower from the obligations of this Agreement or liability under the indebtedness.

**MISCELLANEOUS PROVISIONS.**  If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement.  Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them.  Borrower and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor.  Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability.  All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone.  All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made.  The obligations under this Agreement are joint and several.

**PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT.  BORROWER AGREES TO THE TERMS OF THE AGREEMENT.**

**THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.**

**CHANGE IN TERMS SIGNERS:**

ZYGOS SEVEN LLC

By: _____ (Seal)
Sprios P  Baladuras, Manger of ZYGOS SEVEN LLC

_____ (Seal)
Sprios P  Baladuras

**LENDER:**





EXHIBIT
6

## PROMISSORY NOTE

| Principal $124,000 00 | Loan Date 01-25-2018 | Maturity | | | Call / Coll 321 | Officer 7747 | Initials |
|---|---|---|---|---|---|---|---|

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item
Any item above containing *** has been omitted due to text length limitations

| Borrower | Charlotte Automotive Center Sales LLC<br>Spiro P Balsouras<br>6149 E Independence Blvd<br>Charlotte NC 28212 | Lender | First National Bank of Pennsylvania<br>Charlotte South Park<br>6201 Fairview Road<br>Suite 100<br>Charlotte NC 28210 |
|---|---|---|---|

**Principal Amount  $124,000 00**                                                                                           **Date of Note   January 25, 2018**

**PROMISE TO PAY**   Charlotte Automotive Center Sales LLC and Spiro P Balsouras ("Borrower") jointly and severally promise to pay to First National Bank of Pennsylvania ("Lender")  or order  in lawful money of the United States of America  on demand  the principal amount of One Hundred Twenty four Thousand & 00/100 Dollars ($124 000 00)  or so much as may be outstanding  together with interest on the unpaid outstanding principal balance of each advance  Interest shall be calculated from the date of each advance until repayment of each advance

**PAYMENT**   Borrower will pay this loan in full immediately upon Lender's demand  Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date beginning February 15  2018 with all subsequent interest payments to be due on the same day of each month after that  Unless otherwise agreed or required by applicable law  payments will be applied first to any accrued interest then to principal  then to any unpaid collection costs  and then to any late charges  Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing

**VARIABLE INTEREST RATE**   The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the  Prime Rate  as published from time to time in The Wall Street Journal  or any successor publication (the  Index )  The Index is not necessarily the lowest rate charged by Lender on its loans  If the Index becomes unavailable during the term of this loan  Lender may designate a substitute index after notifying Borrower  Lender will tell Borrower the current Index rate upon Borrower's request  The interest rate change will not occur more often than each day  Borrower understands that Lender may make loans based on other rates as well  The Index currently is 4 500% per annum  Interest on the unpaid principal balance of this Note will be calculated as described in the  INTEREST CALCULATION METHOD  paragraph using a rate of 1 000 percentage point over the Index  adjusted if necessary for any minimum and maximum rate limitations described below  resulting in an initial rate of 5 500% per annum based on a year of 360 days  NOTICE  Under no circumstances will the interest rate on this Note be less than 4 000% per annum or more than the maximum rate allowed by applicable law

**INTEREST CALCULATION METHOD**   Interest on this Note is computed on a 365/360 basis  that is  by applying the ratio of the interest rate over a year of 360 days  multiplied by the outstanding principal balance  multiplied by the actual number of days the principal balance is outstanding  All interest payable under this Note is computed using this method

**PREPAYMENT**   Borrower may pay without penalty all or a portion of the amount owed earlier than it is due  Early payments will not  unless agreed to by Lender in writing  relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest  Rather  early payments will reduce the principal balance due  Borrower agrees not to send Lender payments marked  paid in full   without recourse  or similar language  If Borrower sends such a payment  Lender may accept it without losing any of Lender's rights under this Note and Borrower will remain obligated to pay any further amount owed to Lender  All written communications concerning disputed amounts  including any check or other payment instrument that indicates that the payment constitutes  payment in full  of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to   First National Bank of Pennsylvania  Charlotte South Park  6201 Fairview Road  Suite 100  Charlotte NC  28210

**LATE CHARGE**   If a regularly scheduled interest payment is 15 days or more late  Borrower will be charged 4 000% of the unpaid portion of the regularly scheduled payment  This late charge shall be paid to Lender by Borrower to compensate Lender for Lender's extra costs and expenses caused by the late payment  If Lender demands payment of this loan and Borrower does not pay the loan in full within 15 days after Lender's demand  Borrower also will be charged 4 000% of the unpaid portion of the sum of the unpaid principal plus accrued unpaid interest

**INTEREST AFTER DEFAULT**   Upon default  including failure to pay upon final maturity  at Lender's option  and if permitted by applicable law  Lender may add any unpaid accrued interest to principal and such sum will bear interest therefrom until paid at the rate provided in this Note (including any increased rate)  Upon default  the interest rate on this Note shall be increased by adding an additional 4 000 percentage point margin ( Default Rate Margin )  The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default  If judgment is entered in connection with this Note  interest will continue to accrue after the date of judgment at the rate in effect at the time judgment is entered  However  in no event will the interest rate exceed the maximum interest rate limitations under applicable law

**LENDER S RIGHTS**   Upon Lender's demand  Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due  and then Borrower will pay that amount

**COURSE OF PERFORMANCE**   No prior course of performance between Borrower and Lender  or between Lender and any Grantor  shall constitute a waiver of any of Lender's rights or of any of Borrower or Grantor's obligations under this agreement

**ATTORNEYS FEES EXPENSES**   Lender may hire or pay someone else to help collect this Note if Borrower does not pay  Borrower will pay Lender that amount  This includes  subject to any limits under applicable law  Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit  including reasonable attorneys' fees  expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction) and appeals  If not prohibited by applicable law  Borrower also will pay any court costs  in addition to all other sums provided by law

**JURY WAIVER**   Lender and Borrower hereby waive the right to any jury trial in any action  proceeding  or counterclaim brought by either Lender or Borrower against the other

**GOVERNING LAW**   This Note will be governed by federal law applicable to Lender and  to the extent not preempted by federal law  the laws of the State of North Carolina without regard to its conflicts of law provisions  This Note has been accepted by Lender in the State of North Carolina

## PROMISSORY NOTE
### (Continued)

Page 2

**CHOICE OF VENUE**  If there is a lawsuit  Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Mecklenburg County  State of North Carolina

**DISHONORED ITEM FEE**  Borrower will pay a fee to Lender of $30 00  if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored

**RIGHT OF SETOFF**  To the extent permitted by applicable law  Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking  savings  or some other account)  This includes all accounts Borrower may open in the future  However this does not include any IRA or Keogh accounts  or any trust accounts for which setoff would be prohibited by law  Borrower authorizes Lender  to the extent permitted by applicable law  to charge or setoff all sums owing on the Indebtedness against any and all such accounts

**LINE OF CREDIT**  This Note evidences a revolving line of credit  Advances under this Note may be requested orally by Borrower or as provided in this paragraph  All oral requests shall be confirmed in writing on the day of the request  All communications  instructions or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above  The following person or persons are authorized to request advances and authorize payments under the line of credit until Lender receives from Borrower  at Lender's address shown above  written notice of revocation of such authority  Spiro P  Balsouras  Member of Charlotte Automotive Center Sales LLC  and Spiro P  Balsouras  Individually  Borrower agrees to be liable for all sums either  (A)  advanced in accordance with the instructions of an authorized person or  (B)  credited to any of Borrower's accounts with Lender  The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records  including daily computer print-outs

**FINANCIAL INFORMATION**  The undersigned hereby agrees to prepare or cause to be prepared and to furnish financial statements and additional information  lists of assets and liabilities  aging lists of accounts receivable and payable  inventory schedules  budgets  forecasts  tax returns and other reports and documents with respect to the undersigned's financial condition and business operations and that of any guarantor or surety in form and substance as the holder hereof may request from time to time

**LINE OF CREDIT REVIEW**  The bank will review the line of credit annually and at its sole discretion will determine whether to renew or extend availability under the line of credit until the next annual review

**CREDIT LINE CHECKS**  After the Effective Disbursement Date of  this Agreement  Borrower may obtain credit advances under Borrowers Credit Line by writing a preprinted  Business Line of Credit Check  that Lender will supply to Borrower  Borrower authorizes Lender to charge this Line of Credit for the cost of  Business Line of Credit Checks  ordered on Borrower's behalf for use with this Line of Credit

**LIMITATIONS ON THE USE OF CHECKS**  Lender reserves the right not to honor  Business Line of Credit  Checks  in the following circumstances  Credit Limit Violation  Borrowers Credit Limit has been or would be exceeded by paying the  Business Line of Credit Check  Post-dated Checks  Borrower's  Business Line of Credit Check  is post-dated  If a post-dated  Business Line of Credit Check  is paid and as a result any other check is returned or not paid  Lender is not responsible  Stolen Checks  Borrower's  Business Line of Credit Checks  have been reported lost or stolen  Unauthorized Signatures  Borrower's  Business Line of Credit Check  is not signed by an  authorized Signer  as defined in this agreement  Transaction Violation  Borrower is in violation of any other transaction requirement or would be if Lender paid the  Business Line of Credit Check

**LOST "BUSINESS LINE OF CREDIT CHECKS"**  If Borrower loses Borrower's  Business Line of Credit Checks  or if someone is using them without Borrower's permission  Borrower agrees to contact Lender immediately  Borrower can notify Lender at Lender's address shown at the beginning of this agreement

**INTEREST RATE AFTER DEFAULT**  Upon the occurrence of an event of default as set forth herein the undersigned agrees that the interest rate shall be amended and increased to four percent (4%) per annum greater than the rate set forth above and shall continue to accrue at said default rate until the holder agrees and the underlying event of default has been cured by the undersigned or any defaulting party

**SUCCESSOR INTERESTS**  The terms of this Note shall be binding upon Borrower and upon Borrower's heirs  personal representatives  successors and assigns  and shall inure to the benefit of Lender and its successors and assigns

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES**  Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency  Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address  First National Bank of Pennsylvania Attn  Privacy Department 4140 East State Street Hermitage PA 16148-3487

**GENERAL PROVISIONS**  If any part of this Note cannot be enforced  this fact will not affect the rest of the Note  Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them  Each Borrower understands and agrees that  with or without notice to Borrower  Lender may with respect to any other Borrower  (a) make one or more additional secured or unsecured loans or otherwise extend additional credit  (b) alter  compromise  renew  extend  accelerate  or otherwise change one or more times the time for payment or other terms of any indebtedness  including increases and decreases of the rate of interest on the indebtedness  (c) exchange  enforce  waive  subordinate  fail or decide not to perfect and release any security  with or without the substitution of new collateral  (d)  apply such security and direct the order or manner of sale thereof  including without limitation  any non judicial sale permitted by the terms of the controlling security agreements  as Lender in its discretion may determine  (e) release  substitute  agree not to sue  or deal with any one or more of Borrower's sureties  endorsers  or other guarantors on any terms or in any manner Lender may choose  and  (f) determine how  when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower  Borrower and any other person who signs  guarantees or endorses this Note  to the extent allowed by law  waive presentment  demand for payment  and notice of dishonor  Upon any change in the terms of this Note  and unless otherwise expressly stated in writing  no party who signs this Note  whether as maker  guarantor  accommodation maker or endorser  shall be released from liability  All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral  or impair  fail to realize upon or perfect Lender's security interest in the collateral and take any other action deemed necessary by Lender without the consent of or notice to anyone  All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made  The obligations under this Note are joint and several

## PROMISSORY NOTE
### (Continued)

---

PRIOR TO SIGNING THIS NOTE EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE INCLUDING THE
VARIABLE INTEREST RATE PROVISIONS  EACH BORROWER AGREES TO THE TERMS OF THE NOTE

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE

BORROWER

CHARLOTTE AUTOMOTIVE CENTER SALES LLC

By _____
     Spiro P. Balsouras  Member of Charlotte Automotive
     Center Sales LLC

X _____
     Spiro P. Balsouras  Individually

L serPr  Ver 17 f 0 093  Cop  D H US  Corpo  Se  897 20 0  All Rights Reserved   NO  L\CFAWNSSCFR PL\030 FO  TR 573441H  PR 46





*0220

# COMMERCIAL GUARANTY

| Borrower | Charlotte Automotive Center Sales LLC<br>Spiro P Balaouras<br>6149 E Independence Blvd<br>Charlotte NC 28212 | Lender | First National Bank of Pennsylvania<br>Charlotte South Park<br>6201 Fairview Road<br>Suite 100<br>Charlotte NC 28210 |
|---|---|---|---|
| Guarantor | Zygos Sevens LLC<br>6149 E Independence Blvd<br>Charlotte NC 28212 | | |

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE** For good and valuable consideration Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower or any one or more of them to Lender and the performance and discharge of all Borrower s obligations under the Note and the Related Documents This is a guaranty of payment and performance and not of collection so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender s remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness this Guaranty or any other guaranty of the Indebtedness Guarantor will make any payments to Lender or its order on demand in legal tender of the United States of America in same-day funds without set off or deduction or counterclaim and will otherwise perform Borrower's obligations under the Note and Related Documents Under this Guaranty Guarantor's liability is unlimited and Guarantor's obligations are continuing

**INDEBTEDNESS** The word Indebtedness as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law reasonable attorneys fees arising from any and all debts liabilities and obligations of every nature or form now existing or hereafter arising or acquired that Borrower individually or collectively or interchangeably with others owes or will owe Lender Indebtedness includes without limitation loans advances debts overdraft indebtedness credit card indebtedness lease obligations liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements other obligations and liabilities of Borrower or any one or more of them and any present or future judgments against Borrower or any one or more of them future advances loans or transactions that renew extend modify refinance consolidate or substitute these debts liabilities and obligations whether voluntarily or involuntarily incurred due or to become due by their terms or acceleration absolute or contingent liquidated or unliquidated determined or undetermined direct or indirect primary or secondary in nature or arising from a guaranty or surety secured or unsecured joint or several or joint and several evidenced by a negotiable or non negotiable instrument or writing originated by Lender or another or others barred or unenforceable against Borrower for any reason whatsoever for any transactions that may be voidable for any reason (such as infancy insanity ultra vires or otherwise) and originated then reduced or extinguished and then afterwards increased or reinstated

If Lender presently holds one or more guaranties or hereafter receives additional guaranties from Guarantor Lender s rights under all guaranties shall be cumulative This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties Guarantor's liability will be Guarantor s aggregate liability under the terms of this Guaranty and any such other unterminated guaranties

**CONTINUING GUARANTY** THIS IS A CONTINUING GUARANTY UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER OR ANY ONE OR MORE OF THEM TO LENDER NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED ON AN OPEN AND CONTINUING BASIS ACCORDINGLY ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME

**DURATION OF GUARANTY** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender or any notice to Guarantor or to Borrower and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full If Guarantor elects to revoke this Guaranty Guarantor may only do so in writing Guarantor's written notice of revocation must be mailed to Lender by certified mail at Lender's address listed above or such other place as Lender may designate in writing Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation For this purpose and without limitation the term new Indebtedness does not include the Indebtedness which at the time of notice of revocation is contingent unliquidated undetermined or not due and which later becomes absolute liquidated determined or due For this purpose and without limitation new Indebtedness does not include all or part of the Indebtedness that is incurred by Borrower prior to revocation incurred under a commitment that became binding before revocation any renewals extensions substitutions and modifications of the Indebtedness This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity regardless of Lender's actual notice of Guarantor's death Subject to the foregoing Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness even to zero dollars ($0 00) shall not constitute a termination of this Guaranty This Guaranty is binding upon Guarantor and Guarantor's heirs successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0 00)

**GUARANTOR S AUTHORIZATION TO LENDER** Guarantor authorizes Lender either before or after any revocation hereof without notice or demand and without lessening Guarantor's liability under this Guaranty from time to time (A) prior to revocation as set forth above to make one or more additional secured or unsecured loans to Borrower to lease equipment or other goods to Borrower or otherwise to extend additional credit to Borrower (B) to alter compromise renew extend accelerate or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness including increases and decreases of the rate of interest on the Indebtedness extensions may be repeated and may be for longer than the original loan term (C) to take and hold security for the payment of this Guaranty or the Indebtedness and exchange enforce waive subordinate fail or decide not to perfect and release any such security with or without the substitution of new collateral (D) to release substitute agree not to sue or deal with any one or more of Borrower's sureties endorsers or other guarantors on any terms or in any manner Lender may choose (E) to determine how when and what application of payments and credits shall be made on the Indebtedness (F) to apply such security and direct the order or manner of sale thereof including without limitation any nonjudicial sale permitted by the terms of the controlling    irity agreement or    of trust as Lender in its discretion

# COMMERCIAL GUARANTY
## (Continued)

may determine  (G) to sell transfer assign or grant participations in all or any part of the Indebtedness and  (H) to assign or transfer this Guaranty in whole or in part

**GUARANTOR S REPRESENTATIONS AND WARRANTIES**  Guarantor represents and warrants to Lender that  (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty  (B) this Guaranty is executed at Borrower s request and not at the request of Lender  (C) Guarantor has full power right and authority to enter into this Guaranty (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other Instrument binding upon Guarantor and do not result in a violation of any law regulation court decree or order applicable to Guarantor  (E) Guarantor has not and will not  without the prior written consent of Lender sell lease assign encumber hypothecate transfer or otherwise dispose of all or substantially all of Guarantor s assets or any interest therein  (F) upon Lender's request Guarantor will provide to Lender financial and credit information in form acceptable to Lender and all such financial information which currently has been and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial Information is provided  (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition  (H) no litigation claim investigation administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened  (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition  Guarantor agrees to keep adequately informed from such means of any facts events or circumstances which might in any way affect Guarantor's risks under this Guaranty and Guarantor further agrees that absent a request for information Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower

**GUARANTOR S WAIVERS**  Except as prohibited by applicable law Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower  (B) to make any presentment protest demand or notice of any kind including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral or notice of any action or nonaction on the part of Borrower Lender any surety endorser or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations  (C) to resort for payment or to proceed directly or at once against any person including Borrower or any other guarantor (D) to proceed directly against or exhaust any collateral held by Lender from Borrower any other guarantor or any other person  (E) to give notice of the terms time and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code  (F) to pursue any other remedy within Lender's power or  (G) to commit any act or omission of any kind or at any time with respect to any matter whatsoever

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including but not limited to any rights or defenses arising by reason of  (A) any one action or anti-deficiency law or any other law which may prevent Lender from bringing any action including a claim for deficiency against Guarantor before or after Lender's commencement or completion of any foreclosure action either judicially or by exercise of a power of sale  (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor s rights to proceed against Borrower for reimbursement including without limitation any loss of rights Guarantor may suffer by reason of any law limiting qualifying or discharging the Indebtedness  (C) any disability or other defense of Borrower of any other guarantor or of any other person or by reason of the cessation of Borrower's liability from any cause whatsoever other than payment in full in legal tender of the Indebtedness  (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness  (E) any statute of limitations if at any time any action or suit brought by Lender against Guarantor is commenced there is outstanding Indebtedness which is not barred by any applicable statute of limitations or  (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness  If payment is made by Borrower whether voluntarily or otherwise or by any third party on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower s trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty  In addition to the waivers set forth above Guarantor expressly waives to the extent permitted by North Carolina law all of Guarantor's rights under (1) North Carolina General Statutes Sections 26 7 through Section 26 9 or any similar or subsequent laws and (2) North Carolina General Statutes Section 25 3 605 relating to impairment of collateral or any similar or subsequent law

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff counterclaim counter demand recoupment or similar right whether such claim demand or right may be asserted by the Borrower the Guarantor or both

**GUARANTOR S UNDERSTANDING WITH RESPECT TO WAIVERS**  Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that under the circumstances the waivers are reasonable and not contrary to public policy or law  If any such waiver is determined to be contrary to any applicable law or public policy such waiver shall be effective only to the extent permitted by law or public policy

**SUBORDINATION OF BORROWER S DEBTS TO GUARANTOR**  Guarantor agrees that the Indebtedness whether now existing or hereafter created shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower whether or not Borrower becomes insolvent  Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower upon any account whatsoever to any claim that Lender may now or hereafter have against Borrower  In the event of insolvency and consequent liquidation of the assets of Borrower through bankruptcy by an assignment for the benefit of creditors by voluntary liquidation or otherwise the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower provided however that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness  If Lender so requests any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender  Guarantor agrees and Lender is hereby authorized in the name of Guarantor from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect preserve and enforce its rights under this Guaranty

**MISCELLANEOUS PROVISIONS**  The following miscellaneous provisions are a part of this Guaranty

  **Amendments**  This Guaranty together with any Related Documents constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty  No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment

  **Attorneys Fees Expenses**  Guarantor agrees to pay upon demand all of Lender's costs and expenses including Lender's reasonable attorneys fees and Lender s legal expenses incurred in connection with the enforcement of this Guaranty  Lender may hire or pay someone else to help enforce this Guaranty and Guarantor shall pay the costs and expenses of such enforcement  Costs and expenses include Lender s reasonable attorneys fees and legal expenses whether or not there is a lawsuit including reasonable attorneys fees and legal expe     for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction) ap     and any

# COMMERCIAL GUARANTY
## (Continued)

Page 3

anticipated post judgment collection services   Guarantor also shall pay all court costs and such additional fees as may be directed by the court

**Caption Headings**   Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty

**Governing Law**   This Guaranty will be governed by federal law applicable to Lender and  to the extent not preempted by federal law  the laws of the State of North Carolina without regard to its conflicts of law provisions

**Choice of Venue**   If there is a lawsuit  Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of Mecklenburg County  State of North Carolina

**Integration**   Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty  Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty  the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty  Guarantor hereby indemnifies and holds Lender harmless from all losses claims  damages and costs (including Lender's attorneys fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties  representations and agreements of this paragraph

**Interpretation**   In all cases where there is more than one Borrower or Guarantor  then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require  and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor  the words Borrower  and Guarantor respectively shall mean all and any one or more of them  The words Guarantor   Borrower   and Lender  include the heirs  successors  assigns  and transferees of each of them   If a court finds that any provision of this Guaranty is not valid or should not be enforced  that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced   Therefore  a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable   If any one or more of Borrower or Guarantor are corporations  partnerships  limited liability companies  or similar entities  it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers  directors  partners  managers or other agents acting or purporting to act on their behalf  and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty

**Notices**   Any notice required to be given under this Guaranty shall be given in writing  and except for revocation notices by Guarantor  shall be effective when actually delivered  when actually received by telefacsimile (unless otherwise required by law)  when deposited with a nationally recognized overnight courier  or  if mailed  when deposited in the United States mail  as first class  certified or registered mail  postage prepaid  directed to the addresses shown near the beginning of this Guaranty   All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled  DURATION OF GUARANTY   Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties  specifying that the purpose of the notice is to change the party's address   For notice purposes  Guarantor agrees to keep Lender informed at all times of Guarantor's current address   Unless otherwise provided or required by law  If there is more than one Guarantor  any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors

**No Waiver by Lender**   Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender   No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right   A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty   No prior waiver by Lender  nor any course of dealing between Lender and Guarantor  shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions   Whenever the consent of Lender is required under this Guaranty  the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender

**Successors and Assigns**   Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest  this Guaranty shall be binding upon and inure to the benefit of the parties  their successors and assigns

**Waive Jury**   Lender and Guarantor hereby waive the right to any jury trial in any action  proceeding  or counterclaim brought by either Lender or Guarantor against the other

**DEFINITIONS**   The following capitalized words and terms shall have the following meanings when used in this Guaranty   Unless specifically stated to the contrary  all references to dollar amounts shall mean amounts in lawful money of the United States of America   Words and terms used in the singular shall include the plural  and the plural shall include the singular  as the context may require   Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code

**Borrower**   The word  Borrower  means Charlotte Automotive Center Sales LLC and Spiro P  Balaouras and includes all co-signers and co-makers signing the Note and all their successors and assigns

**Guarantor**   The word  Guarantor  means everyone signing this Guaranty  including without limitation Zygos Sevens LLC and in each case any signer's successors and assigns

**Guaranty**   The word  Guaranty  means this guaranty from Guarantor to Lender

**Indebtedness**   The word  Indebtedness  means Borrower's indebtedness to Lender as more particularly described in this Guaranty

**Lender**   The word  Lender  means First National Bank of Pennsylvania  its successors and assigns

**Note**   The word  Note  means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender  together with all renewals of  extensions of  modifications of  refinancings of  consolidations of and substitutions for promissory notes or credit agreements

**Related Documents**   The words  Related Documents  mean all promissory notes  credit agreements  loan agreements  environmental agreements  guaranties  security agreements  mortgages  deeds of trust  security deeds  collateral mortgages  and all other instruments  agreements and documents  whether now or hereafter existing  executed in connection with the Indebtedness

## COMMERCIAL GUARANTY
### (Continued)

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS   IN ADDITION  EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY"   NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE   THIS GUARANTY IS DATED JANUARY 25  2018

GUARANTOR

ZYGOS SEVENS LLC

By _____
Spiro P  Belsouras  Member of Zygos Sevens LLC

EXHIBIT

8

B32452 - P452

For Registration Fredrick Smith
Register of Deeds
Mecklenburg County NC
Electronically Recorded
2018 Feb 06 08 41 AM      RE Excise Tax $ 0 00
Book 32452      Page 452      Fee $ 64 00
Instrument Number      2018014630

## DEED OF TRUST

**RECORDATION REQUESTED BY**
First National Bank of Pennsylvania, Charlotte South Park, 6201 Fairview Road, Suite 100, Charlotte, NC 28210

**WHEN RECORDED MAIL TO**
First National Bank of Pennsylvania , Technology Center/Loan Operations,  4140  East State Street, Hermitage, PA  18148

**SEND TAX NOTICES TO**
Zygos Seven, LLC, 6149 E  Independence Blvd , Charlotte, NC  28212

020218 - 21

This Deed of Trust prepared by
X _____
First National Bank of Pennsylvania, Loan Processing

MAXIMUM LIEN   The maximum principal amount secured by this Deed of Trust shall not exceed at any one time $124,000 00

THIS DEED OF TRUST is dated January 25, 2018, among Zygos Seven, LLC, a Nevada Limited Liability Company, whose address is 6149 E  Independence Blvd  Charlotte, NC  28212 ( Grantor ), First National Bank of Pennsylvania, whose address is Charlotte South Park, 6201 Fairview Road, Suite 100, Charlotte, NC 28210 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"), and PBRE, Inc , whose address is PO Drawer 7109, Statesville, NC  28687 (referred to below as "Trustee ')

CONVEYANCE AND GRANT   NOW, THEREFORE, as security for the indebtedness, advancements and other sums expended by the Beneficiary pursuant to this Deed of Trust and costs of collection (including attorneys' fees as provided in the Note) and other valuable consideration, the receipt of which is hereby acknowledged, Grantor has bargained, sold, given, granted and conveyed and does by these presents bargain, sell, give, grant and convey to Trustee, and Trustee s heirs or successors and assigns, for the benefit of Lender as Beneficiary, all of Grantor s right  title  and interest in and to the following described real property  together with all existing or subsequently erected or affixed buildings  improvements and fixtures  all easements  rights of way  and appurtenances  all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights), and all other rights  royalties  and profits relating to the real property, including without limitation all minerals,

Submitted electronically by  Select Business Service
in compliance with North Carolina statutes governing recordable documents
and the terms of the submitter agreement with the Mecklenburg County Register of Deeds

**DEED OF TRUST**
**(Continued)**

oil gas geothermal and similar matters (the "Real Property") located in Mecklenburg County, State of North Carolina

CITY OF CHARLOTTE, COUNTY OF MECKLENBURG
DEED DATE 07/20/2011 RECORDED 07/22/2011 VOLUME/PAGE 26621/152
WITH THE ASSESSMENT NUMBER OF 16504224
WITH AN ASSESSED ADDRESS OF 6149 E INDEPENDENCE BLVD, CHARLOTTE, NC, 28212

The Real Property or its address is commonly known as 6149 E Independence Blvd , Charlotte, NC 28212 The Real Property tax identification number is 16504224

To have and to hold said Real Property with all privileges and appurtenances thereunto belonging, to the Trustee, his heirs, successors and assigns forever, upon the trusts, terms and conditions and for the uses hereinafter set forth

**CROSS-COLLATERALIZATION** In addition to the Note this Deed of Trust secures all obligations debts and liabilities plus interest thereon of either Grantor or Borrower to Lender or any one or more of them as well as all claims by Lender against Borrower and Grantor or any one or more of them whether now existing or hereafter arising whether related or unrelated to the purpose of the Note whether voluntary or otherwise whether due or not due direct or indirect determined or undetermined absolute or contingent liquidated or unliquidated whether Borrower or Grantor may be liable individually or jointly with others whether obligated as guarantor surety accommodation party or otherwise and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable

Grantor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Grantor s right title and interest in and to all present and future leases of the Property and all Rents from the Property In addition Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents

**THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THIS DEED OF TRUST THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS**

**GRANTOR'S REPRESENTATIONS AND WARRANTIES** Grantor warrants that (a) this Deed of Trust is executed at Borrower's request and not at the request of Lender (b) Grantor has the full power right and authority to enter into this Deed of Trust and to hypothecate the Property (c) the provisions of this Deed of Trust do not conflict with or result in a default under any agreement or other instrument binding upon Grantor and do not result in a violation of any law regulation court decree or order applicable to Grantor (d) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition and (e) Lender has made no representation to Grantor about Borrower (including without limitation the creditworthiness of Borrower)

**GRANTOR'S WAIVERS** Grantor waives all rights or defenses arising by reason of any one action" or anti-deficiency" law or any other law which may prevent Lender from bringing any action against Grantor including a claim for deficiency to the extent Lender is otherwise entitled to a claim for deficiency before or after Lender s commencement or completion of any foreclosure action either judicially or by exercise of a power of sale Grantor expressly waives to the extent permitted by North Carolina law all of Grantor s rights under (a) North Carolina General Statutes Sections 26-7 through Section 26-9 or any similar or subsequent laws and (b) North Carolina General Statutes Section 25-3-605 relating to the impairment of the collateral or any similar or subsequent law

**PAYMENT AND PERFORMANCE** Except as otherwise provided in this Deed of Trust Borrower and Grantor shall pay to Lender all Indebtedness secured by this Deed of Trust as it becomes due and Borrower and Grantor shall strictly perform all their respective obligations under the Note this Deed of Trust and the Related Documents

**DEED OF TRUST**
**(Continued)**                                                                                      **Page 3**

**POSSESSION AND MAINTENANCE OF THE PROPERTY**   Borrower and Grantor agree that Borrower's and Grantor's possession and use of the Property shall be governed by the following provisions

**Possession and Use**   Until Default Grantor may (1) remain in possession and control of the Property (2) use operate or manage the Property and (3) collect the Rents from the Property

**Duty to Maintain**   Grantor shall maintain the Property in tenantable condition and promptly perform all repairs replacements and maintenance necessary to preserve its value

**Compliance With Environmental Laws**   Grantor represents and warrants to Lender that (1) During the period of Grantor s ownership of the Property there has been no use generation manufacture storage treatment disposal release or threatened release of any Hazardous Substance by any person on under about or from the Property (2) Grantor has no knowledge of or reason to believe that there has been except as previously disclosed to and acknowledged by Lender in writing (a) any breach or violation of any Environmental Laws (b) any use generation manufacture storage treatment disposal release or threatened release of any Hazardous Substance on under about or from the Property by any prior owners or occupants of the Property or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters and (3) Except as previously disclosed to and acknowledged by Lender in writing (a) neither Grantor nor any tenant contractor agent or other authorized user of the Property shall use generate manufacture store treat dispose of or release any Hazardous Substance on under about or from the Property and (b) any such activity shall be conducted in compliance with all applicable federal state and local laws regulations and ordinances including without limitation all Environmental Laws   Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests at Grantor s expense as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust   Any inspections or tests made by Lender shall be for Lender s purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person   The representations and warranties contained herein are based on Grantor s due diligence in investigating the Property for Hazardous Substances   Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws and (2) agrees to indemnify defend and hold harmless Lender against any and all claims losses liabilities damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use generation manufacture storage disposal release or threatened release occurring prior to Grantor s ownership or interest in the Property whether or not the same was or should have been known to Grantor   The provisions of this section of the Deed of Trust including the obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender s acquisition of any interest in the Property whether by foreclosure or otherwise

**Nuisance, Waste**   Grantor shall not cause conduct or permit any nuisance nor commit permit or suffer any stripping of or waste on or to the Property or any portion of the Property   Without limiting the generality of the foregoing Grantor will not remove or grant to any other party the right to remove any timber minerals (including oil and gas) coal clay scoria soil gravel or rock products without Lender s prior written consent

**Removal of Improvements**   Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent   As a condition to the removal of any Improvements Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value

**Lender's Right to Enter**   Lender and Lender s agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender s interests and to inspect the Real Property for purposes of Grantor s compliance with the terms and conditions of this Deed of Trust

**Compliance with Governmental Requirements**   Grantor shall promptly comply with all laws ordinances and regulations now or hereafter in effect of all governmental authorities applicable to the use or

## DEED OF TRUST
## (Continued)

Page 4

occupancy of the Property including without limitation the Americans With Disabilities Act  Grantor may contest in good faith any such law  ordinance  or regulation  and withhold compliance during any proceeding  including appropriate appeals  so long as Grantor has notified Lender in writing prior to doing so and so long as  in Lender s sole opinion  Lender s interests in the Property are not jeopardized  Lender may require Grantor to post adequate security or a surety bond  reasonably satisfactory to Lender  to protect Lender's interest

**Duty to Protect**  Grantor agrees neither to abandon or leave unattended the Property  Grantor shall do all other acts  in addition to those acts set forth above in this section  which from the character and use of the Property are reasonably necessary to protect and preserve the Property

**DUE  ON SALE - CONSENT BY LENDER**  Lender may  at Lender s option  declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer  without Lender s prior written consent  of all or any part of the Real Property  or any interest in the Real Property  A  sale or transfer" means the conveyance of Real Property or any right  title or interest in the Real Property  whether legal  beneficial or equitable  whether voluntary or involuntary  whether by outright sale  deed  installment sale contract  land contract  contract for deed  leasehold interest with a term greater than three (3) years  lease-option contract  or by sale  assignment  or transfer of any beneficial interest in or to any land trust holding title to the Real Property  or by any other method of conveyance of an interest in the Real Property  If any Grantor is a corporation  partnership or limited liability company  transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock  partnership interests or limited liability company interests as the case may be  of such Grantor  However  this option shall not be exercised by Lender if such exercise is prohibited by federal law or by North Carolina law

**TAXES AND LIENS**  The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust

**Payment**  Grantor shall pay when due (and in all events prior to delinquency) all taxes  special taxes  assessments  charges (including water and sewer)  fines and impositions levied against or on account of the Property  and shall pay when due all claims for work done on or for services rendered or material furnished to the Property  Grantor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust  except for the lien of taxes and assessments not due  except for the Existing Indebtedness referred to below  and except as otherwise provided in this Deed of Trust

**Right to Contest**  Grantor may withhold payment of any tax  assessment  or claim in connection with a good faith dispute over the obligation to pay  so long as Lender s interest in the Property is not jeopardized  If a lien arises or is filed as a result of nonpayment  Grantor shall within fifteen (15) days after the lien arises or  if a lien is filed  within fifteen (15) days after Grantor has notice of the filing  secure the discharge of the lien or  if requested by Lender  deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and reasonable attorneys  fees or other charges that could accrue as a result of a foreclosure or sale under the lien  In any contest  Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property  Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings

**Evidence of Payment**  Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property

**Notice of Construction**  Grantor shall notify Lender at least fifteen (15) days before any work is commenced  any services are furnished  or any materials are supplied to the Property  if any mechanic's lien  materialmen s lien  or other lien could be asserted on account of the work  services  or materials  Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements

**PROPERTY DAMAGE INSURANCE**  The following provisions relating to insuring the Property are a part of this

**DEED OF TRUST**
**(Continued)**

Deed of Trust

**Maintenance of Insurance**   Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause and with a standard mortgagee clause in favor of Lender   Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies   Additionally Grantor shall maintain such other insurance including but not limited to hazard business interruption and boiler insurance as Lender may reasonably require   Policies shall be written in form amounts coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender   Grantor upon request of Lender will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender   Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act omission or default of Grantor or any other person   Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area   Grantor agrees to obtain and maintain Federal Flood Insurance if available within 45 days after notice is given by Lender that the Property is located in a special flood hazard area for the full unpaid principal balance of the loan and any prior liens on the property securing the loan up to the maximum policy limits set under the National Flood Insurance Program or as otherwise required by Lender and to maintain such insurance for the term of the loan

**Application of Proceeds**   Grantor shall promptly notify Lender of any loss or damage to the Property Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty   Whether or not Lender s security is impaired   Lender may at Lender s election receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness payment of any lien affecting the Property or the restoration and repair of the Property   If Lender elects to apply the proceeds to restoration and repair   Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender   Lender shall upon satisfactory proof of such expenditure pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Deed of Trust   Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust then to pay accrued interest and the remainder if any shall be applied to the principal balance of the Indebtedness   If Lender holds any proceeds after payment in full of the Indebtedness such proceeds shall be paid to Grantor as Grantor s interests may appear

**Compliance with Existing Indebtedness**   During the period in which any Existing Indebtedness described below is in effect compliance with the insurance provisions contained in the instrument evidencing such Existing Indebtedness shall constitute compliance with the insurance provisions under this Deed of Trust to the extent compliance with the terms of this Deed of Trust would constitute a duplication of insurance requirement   If any proceeds from the insurance become payable on loss the provisions in this Deed of Trust for division of proceeds shall apply only to that portion of the proceeds not payable to the holder of the Existing Indebtedness

**Grantor's Report on Insurance**   Upon request of Lender however not more than once a year Grantor shall furnish to Lender a report on each existing policy of insurance showing (1) the name of the insurer (2) the risks insured (3) the amount of the policy (4) the property insured the then current replacement value of such property and the manner of determining that value and (5) the expiration date of the policy   Grantor shall upon request of Lender have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property

**LENDER'S EXPENDITURES**   If any action or proceeding is commenced that would materially affect Lender s interest in the Property or if Grantor fails to comply with any provision of this Deed of Trust or any Related Documents including but not limited to Grantor s failure to comply with any obligation to maintain Existing

## DEED OF TRUST
### (Continued)

Indebtedness in good standing as required below or to discharge or pay when due any amounts Grantor is required to discharge or pay under this Deed of Trust or any Related Documents Lender on Grantor s behalf may (but shall not be obligated to) take any action that Lender deems appropriate including but not limited to discharging or paying all taxes liens security interests encumbrances and other claims at any time levied or placed on the Property and paying all costs for insuring maintaining and preserving the Property All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor All such expenses will become a part of the Indebtedness and at Lender's option will (A) be payable on demand (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy or (2) the remaining term of the Note or (C) be treated as a balloon payment which will be due and payable at the Note's maturity The Deed of Trust also will secure payment of these amounts Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default

**WARRANTY, DEFENSE OF TITLE** The following provisions relating to ownership of the Property are a part of this Deed of Trust

**Title** Grantor warrants that (a) Grantor holds good and marketable title of record to the Property in fee simple free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy title report or final title opinion issued in favor of and accepted by Lender in connection with this Deed of Trust and (b) Grantor has the full right power and authority to execute and deliver this Deed of Trust to Lender

**Defense of Title** Subject to the exception in the paragraph above Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons In the event any action or proceeding is commenced that questions Grantor s title or the interest of Trustee or Lender under this Deed of Trust Grantor shall defend the action at Grantor s expense Grantor may be the nominal party in such proceeding but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender s own choice and Grantor will deliver or cause to be delivered to Lender such instruments as Lender may request from time to time to permit such participation

**Compliance With Laws** Grantor warrants that the Property and Grantor s use of the Property complies with all existing applicable laws ordinances and regulations of governmental authorities

**Survival of Representations and Warranties** All representations warranties and agreements made by Grantor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust shall be continuing in nature and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full

**EXISTING INDEBTEDNESS** The following provisions concerning Existing Indebtedness are a part of this Deed of Trust

**Existing Lien** The lien of this Deed of Trust securing the Indebtedness may be secondary and inferior to an existing lien Grantor expressly covenants and agrees to pay or see to the payment of the Existing Indebtedness and to prevent any default on such indebtedness any default under the instruments evidencing such indebtedness or any default under any security documents for such indebtedness

**No Modification** Grantor shall not enter into any agreement with the holder of any mortgage deed of trust or other security agreement which has priority over this Deed of Trust by which that agreement is modified amended extended or renewed without the prior written consent of Lender Grantor shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender

**CONDEMNATION** The following provisions relating to condemnation proceedings are a part of this Deed of Trust

**Proceedings** If any proceeding in condemnation is filed Grantor shall promptly notify Lender in writing and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the

**DEED OF TRUST**
**(Continued)**                                                                              **Page 7**

award  Grantor may be the nominal party in such proceeding  but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice  and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation

**Application of Net Proceeds**  If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation  Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property  The net proceeds of the award shall mean the award after payment of all reasonable costs  expenses  and attorneys fees incurred by Trustee or Lender in connection with the condemnation

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES**  The following provisions relating to governmental taxes  fees and charges are a part of this Deed of Trust

**Current Taxes, Fees and Charges**  Upon request by Lender  Grantor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender s lien on the Real Property  Grantor shall reimburse Lender for all taxes  as described below  together with all expenses incurred in recording  perfecting or continuing this Deed of Trust including without limitation all taxes  fees  documentary stamps  and other charges for recording or registering this Deed of Trust

**Taxes**  The following shall constitute taxes to which this section applies  (1)  a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust  (2)  a specific tax on Borrower which Borrower is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust  (3)  a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note  and  (4)  a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Borrower

**Subsequent Taxes**  If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust  this event shall have the same effect as Default  and Lender may exercise any or all of its available remedies for Default as provided below unless Grantor either  (1)  pays the tax before it becomes delinquent  or  (2)  contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender

**SECURITY AGREEMENT, FINANCING STATEMENTS**  The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust

**Security Agreement**  This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures  and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time

**Security Interest**  Upon request by Lender  Grantor shall take whatever action is requested by Lender to perfect and continue Lender s security interest in the Rents and Personal Property  In addition to recording this Deed of Trust in the real property records  Lender may at any time and without further authorization from Grantor  file executed counterparts  copies or reproductions of this Deed of Trust as a financing statement  Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest  Upon default  Grantor shall not remove  sever or detach the Personal Property from the Property  Upon default  Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law

**Addresses**  The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust

**FURTHER ASSURANCES, ATTORNEY-IN-FACT**  The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust

**DEED OF TRUST**
**(Continued)**

**Further Assurances**   At any time and from time to time upon request of Lender Grantor will make execute and deliver or will cause to be made executed or delivered to Lender or to Lender s designee and when requested by Lender cause to be filed recorded refiled or rerecorded as the case may be at such times and in such offices and places as Lender may deem appropriate any and all such mortgages deeds of trust security deeds security agreements financing statements continuation statements instruments of further assurance certificates and other documents as may in the sole opinion of Lender be necessary or desirable in order to effectuate complete perfect continue or preserve (1) Borrower's and Grantor s obligations under the Note this Deed of Trust and the Related Documents and (2) the liens and security interests created by this Deed of Trust on the Property whether now owned or hereafter acquired by Grantor The lien of this Deed of Trust and the security interest granted hereby will automatically attach without further act to all after-acquired property attached to and or used in the operation of the Property or any part thereof Unless prohibited by law or Lender agrees to the contrary in writing Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph

**Attorney-In Fact**   If Grantor fails to do any of the things referred to in the preceding paragraph Lender may do so for and in the name of Grantor and at Grantor's expense For such purposes Grantor hereby irrevocably appoints Lender as Grantor s attorney in-fact for the purpose of making executing delivering filing recording and doing all other things as may be necessary or desirable in Lender s sole opinion to accomplish the matters referred to in the preceding paragraph

**FULL PERFORMANCE**   If Borrower and Grantor pay all the Indebtedness when due and Grantor otherwise performs all the obligations imposed upon Grantor under this Deed of Trust Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Grantor suitable statements of termination of any financing statement on file evidencing Lender s security interest in the Rents and the Personal Property Any reconveyance fee required by law shall be paid by Grantor if permitted by applicable law

**DEFAULT**   Default will occur if payment of the Indebtedness in full is not made immediately when due

**RIGHTS AND REMEDIES ON DEFAULT**   If Default occurs under this Deed of Trust at any time thereafter Trustee or Lender may exercise any one or more of the following rights and remedies

**Election of Remedies**   Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy and an election to make expenditures or to take action to perform an obligation of Grantor under this Deed of Trust after Grantor s failure to perform shall not affect Lender s right to declare a default and exercise its remedies

**Accelerate Indebtedness**   Lender shall have the right at its option without notice to Borrower or Grantor to declare the entire Indebtedness immediately due and payable including any prepayment penalty which Borrower would be required to pay

**Express Power of Sale Provision**   Upon the application or request of Lender it shall be lawful for and the duty of the Trustee and the Trustee is hereby authorized and empowered to expose to sale and to sell the Property at public auction for cash after having first complied with all applicable requirements of North Carolina law with respect to the exercise of powers of sale contained in deeds of trust or such other sales appropriate under the circumstances and upon any such sale the Trustee shall convey title to the purchaser in fee simple In the event of any sale under this Deed of Trust by virtue of the exercise of the powers granted in this Deed of Trust or pursuant to any order and any judicial proceeding or otherwise the Property may be sold as an entirety or in separate parcels and in such manner or order as Lender in its sole discretion may elect Trustee shall be authorized to hold a sale pursuant to North Carolina General Statute Chapter 45 If Trustee so elects Trustee may sell the Property covered by this Deed of Trust at one or more separate sales in any manner permitted by applicable North Carolina law and any exercise of the powers granted in this Deed of Trust shall not extinguish or exhaust such powers until the entire Property is sold or the Indebtedness is paid in full If such Indebtedness is now or hereafter further secured by any chattel mortgages pledges contracts of guaranty assignments of lease or other security

**DEED OF TRUST**
**(Continued)**

instruments  Lender may at its option exercise the remedies granted under any of the security agreements either concurrently or independently and in such order as Lender may determine

**Foreclosure**  With respect to all or any part of the Real Property  the Trustee shall have the right to foreclose by notice and sale  and Lender shall have the right to foreclose by judicial foreclosure  in either case in accordance with and to the full extent provided by applicable law

**UCC Remedies**  With respect to all or any part of the Personal Property , Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code

**Collect Rents**  Lender shall have the right  without notice to Borrower or Grantor to take possession of and manage the Property and collect the Rents  including amounts past due and unpaid  and apply the net proceeds  over and above Lender's costs  against the Indebtedness  In furtherance of this right  Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender  If the Rents are collected by Lender  then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds  Payments by tenants or other users to Lender in response to Lender s demand shall satisfy the obligations for which the payments are made  whether or not any proper grounds for the demand existed  Lender may exercise its rights under this subparagraph either in person  by agent or through a receiver

**Appoint Receiver**  Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property  with the power to protect and preserve the Property  to operate the Property preceding foreclosure or sale  and to collect the Rents from the Property and apply the proceeds  over and above the cost of the receivership  against the Indebtedness  The receiver may serve without bond if permitted by law  Lender s right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount  Employment by Lender shall not disqualify a person from serving as a receiver

**Tenancy at Sufferance**  If Grantor remains in possession of the Property after the Property is sold as provided above  or Lender otherwise becomes entitled to possession of the Property upon default of Borrower or Grantor  Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall  at Lender's option  either  (1)  pay a reasonable rental for the use of the Property  or (2)  vacate the Property immediately upon the demand of Lender

**Other Remedies**  Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity

**Notice of Sale**  Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made  Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition  Any sale of the Personal Property may be made in conjunction with any sale of the Real Property

**Sale of the Property**  To the extent permitted by applicable law  Borrower and Grantor hereby waives any and all rights to have the Property marshalled  In exercising its rights and remedies  the Trustee or Lender shall be free to sell all or any part of the Property together or separately  in one sale or by separate sales  Lender shall be entitled to bid at any public sale on all or any portion of the Property

**Attorneys' Fees, Expenses**  If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust  Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys fees at trial and upon any appeal  Whether or not any court action is involved  and to the extent not prohibited by law  all reasonable expenses Lender incurs that in Lender s opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid  Expenses covered by this paragraph include  without limitation  however subject to any limits under applicable law  Lender s reasonable attorneys fees and Lender s legal expenses  whether or not there is a

# DEED OF TRUST
## (Continued)

lawsuit including reasonable attorneys fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction) appeals and any anticipated post-judgment collection services the cost of searching records obtaining title reports (including foreclosure reports) surveyors reports and appraisal fees title insurance and fees for the Trustee to the extent permitted by applicable law Grantor also will pay any court costs in addition to all other sums provided by law

**Rights of Trustee** Trustee shall have all of the rights and duties of Lender as set forth in this section

**POWERS AND OBLIGATIONS OF TRUSTEE** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust

**Powers of Trustee** In addition to all powers of Trustee arising as a matter of law Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Grantor (a) join in preparing and filing a map or plat of the Real Property including the dedication of streets or other rights to the public (b) join in granting any easement or creating any restriction on the Real Property and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust

**Trustee** Trustee shall meet all qualifications required for Trustee under applicable law In addition to the rights and remedies set forth above with respect to all or any part of the Property the Trustee shall have the right to foreclose by notice and sale and Lender shall have the right to foreclose by judicial foreclosure in either case in accordance with and to the full extent provided by applicable law

**Trustee's Fees** The Trustee s commission shall be five percent (5%) of the gross proceeds of the sale for a completed foreclosure In the event foreclosure is commenced but not completed Grantor shall pay all expenses incurred by Trustee and partial commission computed on five percent (5%) of the outstanding Indebtedness according to the following schedule one fourth of the commission before Trustee issues a notice of hearing on the right to foreclosure one half of the commission after issuance of notice of hearing three-fourths of the commission after a hearing and the full commission after the initial sale

**Express Power to Substitute a Trustee** Lender shall have the irrevocable right to remove at any time and from time to time without limit the Trustee named in this Deed of Trust without notice or cause and to appoint a successor by an instrument in writing duly acknowledged in such a form as to entitle such written instrument to be recorded in the State of North Carolina and in the event of the death or resignation of the Trustee named in this Deed of Trust Lender shall have the right to appoint a successor by such written instrument and any Trustee so appointed shall be vested with the title to the Property and shall possess all the powers duties and obligations herein conferred on the Trustee in the same manner and to the same extent as though the successor trustee were named in this Deed of Trust as Trustee

**NOTICES** Any notice required to be given under this Deed of Trust including without limitation any notice of default and any notice of sale shall be given in writing and shall be effective when actually delivered when actually received by telefacsimile (unless otherwise required by law) when deposited with a nationally recognized overnight courier or if mailed when deposited in the United States mail as first class certified or registered mail postage prepaid directed to the addresses shown near the beginning of this Deed of Trust Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties specifying that the purpose of the notice is to change the party s address For notice purposes Grantor agrees to keep Lender informed at all times of Grantor s current address Unless otherwise provided or required by law if there is more than one Grantor any notice given by Lender to any Grantor is deemed to be notice given to all Grantors

**MISCELLANEOUS PROVISIONS** The following miscellaneous provisions are a part of this Deed of Trust

**Amendments** This Deed of Trust together with any Related Documents constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment

**Annual Reports** If the Property is used for purposes other than Grantor s residence Grantor shall furnish

## DEED OF TRUST
### (Continued)

to Lender upon request a certified statement of net operating income received from the Property during Grantor s previous fiscal year in such form and detail as Lender shall require  "Net operating income shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property

**Caption Headings**  Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust

**Merger**   There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity without the written consent of Lender

**Governing Law**  This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of North Carolina without regard to its conflicts of law provisions  This Deed of Trust has been accepted by Lender in the State of North Carolina

**Choice of Venue**  If there is a lawsuit  Grantor agrees upon Lender s request to submit to the jurisdiction of the courts of Mecklenburg County  State of North Carolina

**Joint and Several Liability**   All obligations of Borrower and Grantor under this Deed of Trust shall be joint and several and all references to Grantor shall mean each and every Grantor  and all references to Borrower shall mean each and every Borrower  This means that each Grantor signing below is responsible for all obligations in this Deed of Trust  Where any one or more of the parties is a corporation  partnership  limited liability company or similar entity  it is not necessary for Lender to inquire into the powers of any of the officers  directors  partners  members  or other agents acting or purporting to act on the entity s behalf and any obligations made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Deed of Trust

**No Waiver by Lender**   Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender  No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right  A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust  No prior waiver by Lender  nor any course of dealing between Lender and Grantor  shall constitute a waiver of any of Lender s rights or of any of Grantor s obligations as to any future transactions  Whenever the consent of Lender is required under this Deed of Trust  the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender

**Severability**  If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal  invalid  or unenforceable as to any circumstance  that finding shall not make the offending provision  illegal  invalid  or unenforceable as to any other circumstance  If feasible  the offending provision shall be considered modified so that it becomes legal  valid and enforceable  If the offending provision cannot be so modified  it shall be considered deleted from this Deed of Trust  Unless otherwise required by law  the illegality  invalidity  or unenforceability of any provision of this Deed of Trust shall not affect the legality  validity or enforceability of any other provision of this Deed of Trust

**Successors and Assigns**  Subject to any limitations stated in this Deed of Trust on transfer of Grantor s interest  this Deed of Trust shall be binding upon and inure to the benefit of the parties  their successors and assigns  If ownership of the Property becomes vested in a person other than Grantor  Lender  without notice to Grantor  may deal with Grantor s successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Deed of Trust or liability under the Indebtedness

**Time is of the Essence**  Time is of the essence in the performance of this Deed of Trust

**DEFINITIONS**  The following capitalized words and terms shall have the following meanings when used in this Deed of Trust  Unless specifically stated to the contrary  all references to dollar amounts shall mean amounts

**DEED OF TRUST**
**(Continued)**

in lawful money of the United States of America  Words and terms used in the singular shall include the plural and the plural shall include the singular  as the context may require  Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code

**Beneficiary**  The word  Beneficiary  means First National Bank of Pennsylvania  and its successors and assigns

**Borrower**  The word "Borrower" means Charlotte Automotive Center Sales LLC and Spiro P Balaouras and includes all co-signers and co-makers signing the Note and all their successors and assigns

**Deed of Trust**  The words "Deed of Trust" mean this Deed of Trust among Grantor  Lender  and Trustee and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents

**Default**  The word  Default" means the Default set forth in this Deed of Trust in the section titled Default

**Environmental Laws**  The words  Environmental Laws" mean any and all state  federal and local statutes regulations and ordinances relating to the protection of human health or the environment  including without limitation the Comprehensive Environmental Response  Compensation  and Liability Act of 1980  as amended  42 U S C  Section 9601  et seq  ("CERCLA")  the Superfund Amendments and Reauthorization Act of 1986  Pub  L  No  99-499  ('SARA")  the Hazardous Materials Transportation Act  49 U S C  Section 1801  et seq  the Resource Conservation and Recovery Act  42 U S C  Section 6901  et seq  or other applicable state or federal laws  rules  or regulations adopted pursuant thereto

**Existing Indebtedness**  The words  Existing Indebtedness  mean the indebtedness described in the Existing Liens provision of this Deed of Trust

**Grantor**  The word  'Grantor" means Zygos Seven  LLC

**Hazardous Substances**   The words  Hazardous Substances' mean materials that  because of their quantity  concentration or physical  chemical or infectious characteristics  may cause or pose a present or potential hazard to human health or the environment when improperly used  treated  stored  disposed of generated  manufactured  transported or otherwise handled  The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances materials or waste as defined by or listed under the Environmental Laws   The term "Hazardous Substances  also includes  without limitation  petroleum and petroleum by-products or any fraction thereof and asbestos

**Improvements**   The word  Improvements" means all existing and future improvements  buildings structures  mobile homes affixed on the Real Property  facilities  additions  replacements  and other construction on the Real Property

**Indebtedness**  The word  Indebtedness' means and includes any and all of Grantor's liabilities  obligations debts and indebtedness to Lender  now existing or hereinafter incurred or created  including without limitation  all loans  advances  future advances  interest  costs  debts  overdraft indebtedness  credit card indebtedness  lease obligations  other obligations and liabilities of Grantor or any of them  and any present or future judgments against Grantor or any of them  and whether any such indebtedness is voluntarily or involuntarily incurred  due or not due  absolute or contingent  liquidated or unliquidated  determined or undetermined  whether Grantor may be liable individually or jointly with others or primarily or secondarily or as guarantor or surety  whether recovery on the indebtedness may be or may become barred or unenforceable against Grantor for any reason whatsoever  and whether the indebtedness arises from transactions which may be voidable on account of infancy  insanity  ultra vires or otherwise

**Lender**  The word  'Lender" means First National Bank of Pennsylvania  its successors and assigns

**Note**  The word  Note  means the promissory note dated January 25  2018  in the original principal amount of **$124,000 00**  from Borrower to Lender  together with all renewals of  extensions of modifications of  refinancings of  consolidations of  and substitutions for the promissory note or agreement

# DEED OF TRUST
## (Continued)

**NOTICE TO GRANTOR   THE NOTE CONTAINS A VARIABLE INTEREST RATE**

**Personal Property**   The words  Personal Property  mean all equipment fixtures  and other articles of personal property now or hereafter owned by Grantor  and now or hereafter attached or affixed to the Real Property  together with all accessions  parts  and additions  to  all replacements of  and all substitutions for any of such property  and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property

**Property**   The word "Property" means collectively the Real Property and the Personal Property

**Real Property**   The words "Real Property' mean the real property  interests and rights  as further described in this Deed of Trust

**Related Documents**   The words "Related Documents  mean all promissory notes  credit agreements  loan agreements  environmental agreements  guaranties  security agreements  mortgages  deeds of trust security deeds  collateral mortgages  and all other instruments  agreements and documents  whether now or hereafter existing  executed in connection with the Indebtedness

**Rents**   The word "Rents" means all present and future rents  revenues  income  issues  royalties  profits and other benefits derived from the Property

**Trustee**   The word "Trustee" means PBRE  Inc   whose address is PO Drawer 7109  Statesville  NC 28687 and any substitute or successor trustees

**GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND GRANTOR AGREES TO ITS TERMS**

**GRANTOR**

ZYGOS SEVEN, LLC

By _____

Spiro P  Balaouras, Member of Zygos Seven, LLC

## DEED OF TRUST
### (Continued)

### LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF _North Carolina_      )
     ) SS
COUNTY OF _Mecklenburg_      )

I _Menabahen Shah_ a Notary Public for said County and State certify that **Spiro P Balaouras, Member of Zygos Seven, LLC** personally came before me this day and acknowledged the due execution of the foregoing instrument in writing by himself or herself for **Zygos Seven, LLC**, a limited liability company for the uses and purposes therein set forth

Witness my hand and Notarial Seal this the ___25th___ day of ___January___, 20_18_

_Menabahen Shah_
**Notary Public**

My Commission Expires

___4/14/19___

( Affix Notarial Seal Here )

*(Notary seal: MONABAHEN SHAH — My Commission Expires — NOTARY PUBLIC — MECKLENBURG COUNTY, NC — 04/14/2019)*

LaserPro  Ver  17 1 0 023   Copr  D+H  USA  Corporation  1997  2018    All Rights  Reserved    - NC
L \CFI\WIN95\CFI\LPL\G01 FC  TR-5736414  PR-40

## Horry County
# Probate Court

**Public Inquiry > Search Cases > Case Detail**

Search Cases | Search Parties

### Case Summary

| Case No. | Status | Filed | Judicial Assistant | Assigned |
|---|---|---|---|---|
| 2019ES2602407 | Open | 10/21/2019 | Elliott, Estelle | 10/21/2019 |

### Primary Parties

| Name | Type | Date of Death | Address |
|---|---|---|---|
| Balaouras, Spiros | Deceased Person | 6/9/2019 | |

### Case Parties

| Name | Type |
|---|---|
| Balaouras, Spiros | Deceased Person |
| Balaouras, Theresa | Personal Representative |

### Scheduled Events

no records found

### Filings

no records found

### Inventory

| | Net Worth | |
|---|---|---|
| no records found | Estate Value: | 0.00 |
| | Gross Value: | 0.00 |
| | Encumbrance: | 0.00 |
| | = Net Worth: | 0.00 |



EXHIBIT
9

SOSID: 1213158
Date Filed: 7/19/2011 8:47:00 AM
Elaine F. Marshall
North Carolina Secretary of State
C201120000004

**State of North Carolina**
**Department of the Secretary of State**

**APPLICATION FOR CERTIFICATE OF AUTHORITY**
**FOR LIMITED LIABILITY COMPANY**

Pursuant to §57C-7-04 of the General Statutes of North Carolina, the undersigned limited liability company hereby applies for a Certificate of Authority to transact business in the State of North Carolina, and for that purpose submits the following:

1. The name of the limited liability company is   _Zygos Seven LLC_   ;

   and if the limited liability company name is unavailable for use in the State of North Carolina, the name the limited liability company wishes to use is _____

2. The state or country under whose laws the limited liability company was formed is:  _Nevada_

3. The date of formation was  _3/26/2010_  ; its period of duration is:  _in perpetuity_

4. Principal office information: *(Select either a or b.)*

   a. ☑ The limited liability company has a principal office.

      The street address and county of the principal office of the limited liability company is:

      Number and Street  _2054 Rockburne Street_
      City, State, Zip Code  _Henderson Nevada 89044_  County  _Clark_

      The mailing address, *if different from the street address,* of the principal office of the corporation is:
      _8440 Cricket Lake Dr. Charlotte, NC 28277_

   b. ☐ The limited liability company does not have a principal office.

5. The street address and county of the registered office in the State of North Carolina is:

   Number and Street  _8440 Cricket Lake Dr._
   City, State, Zip Code  _Charlotte, NC 28277_  County  _Mecklenburg_

6. The mailing address, *if different from the street address,* of the registered office in the State of North Carolina is:
   _____

7. The name of the registered agent in the State of North Carolina is:  _Helen Baladunas_

**EXHIBIT**
_10_

CORPORATIONS DIVISION        P.O. BOX 29622.        RALEIGH, NC 27626-0622

*(Revised January 2002)*        *(Form L-09)*

**APPLICATION FOR CERTIFICATE OF AUTHORITY**
**Page 2**

8. The names, titles, and usual business addresses of the current managers of the limited liability company are:
   *(use attachment if necessary)*

| *Name* | *Business Address* |
|---|---|
| SPIRO BRIAOUNAS | 8410 Cricket Lake Dr. Charlotte NC 2827 |
| PARIS BRIAOUNAS | |

9. Attached is a certificate of existence (or document of similar import), duly authenticated by the secretary of state or other official having custody of limited liability company records in the state or country of formation. **The Certificate of Existence must be less than six months old. A photocopy of the certification cannot be accepted.**

10. If the limited liability company is required to use a fictitious name in order to transact business in this State, a copy of the resolution of its managers adopting the fictitious name is attached.

11. This application will be effective upon filing, unless a delayed date and/or time is specified: _____

This the *18* day of *July*, 20 *11*

Zggos Scven LLC
*Name of Limited Liability Company*

_____
*Signature of Manager*

SPIRO BRIAOUNAS
*Type or Print Name*

Notes:
1. **Filing fee is $250.** This document must be filed with the Secretary of State.

CORPORATIONS DIVISION          P. O. BOX 29622          RALEIGH, NC 27626-0622

*(Revised January 2002)*          *(Form L-09)*

C201129200034

SOSID: 1226811
Date Filed: 10/21/2011 2:33:00 PM
Elaine F. Marshall
North Carolina Secretary of State
C201129200034

## State of North Carolina
## Department of the Secretary of State

## Limited Liability Company
### ARTICLES OF ORGANIZATION

Pursuant to §57C-2-20 of the General Statutes of North Carolina, the undersigned does hereby submit these Articles of Organization for the purpose of forming a limited liability company.

1.    The name of the limited liability company is:

CHARLOTTE AUTOMOTIVE Center Sales LLC

2.    If the limited liability company is to dissolve by a specific date, the latest date on which the limited liability company is to dissolve: (*If no date for dissolution is specified, there shall be no limit on the duration of the limited liability company.*)

3.    The name and address of each person executing these articles of organization is as follows:  (*State whether each person is executing these articles of organization in the capacity of a member, organizer or both.  Note:  This document must be signed by all persons listed here*).

SPIRO BATADURAS = Member
6149 E. INDEPENDENCE BIVD
CHARLOTTE, NC 28212

4.    The street address and county of the initial registered office of the limited liability company is:

Number and Street

6149 E INDEPENDENCE BIVD

CHARLOTTE NC 28212 (mecklenburg)

City, State, Zip Code _____ County

5.    The mailing address, *if different from the street address,* of the initial registered office is:

6.    The name of the initial registered agent is

SPIRO BATADURAS

7.    Principal office information:  (*Select either a or b.*)

a.  The limited liability company has a principal office.

1


EXHIBIT
11

C201129200034

The street address and county of the principal office of the limited liability company is:

Street _____ Number and _6144 E. INDEPENDENCE BLVD_ chArlotte, NC
_____ City, State, Zip
Code _____ County _Mecklenburg_ 28212

The mailing address, *if different from the street address*, of the principal office of the corporation is:

_____ SAME AS ABOVE

b. The limited liability company does not have a principal office.

8. Check one of the following:

_____(i) *Member-managed LLC*: all members by virtue of their status as members shall be managers of this limited liability company.

__✓__(ii) *Manager-managed LLC*: except as provided by N.C.G.S. Section 57C-3-20(a), the members of this limited liability company shall not be managers by virtue of their status as members.

9. Any other provisions which the limited liability company elects to include are attached.

10. These articles will be effective upon filing, unless a date and/or time is specified:

_____

This is the _17_ day of _11_ , 20_11_

_____
_____
                                    *Signature*
                     SPIRO BRIADES member

_____

2

ADDitiuNAl   member   to   ChArloFe Aulomotive

Center   SoNcS LLC is   PAr, S BATACUNAS
8440  cricket lake Dr
ChAplotte, NC 28277

SPIRO   BATAUNAS

10/21/11

FOR REGISTRATION J DAVID GRANBERRY
REGISTER OF DEEDS
MECKLENBURG COUNTY, NC
2011 JUL 22 11 00 68 AM
BK 26521 PG 152-155 FEE $25 00
EXCISE TAX $550 00
INSTRUMENT # 2011081566

2011081566

# NORTH CAROLINA SPECIAL WARRANTY DEED

Excise Tax  $550 00

Tax Lot No _____ Parcel Identifier No _165-042-24_
Verified by _____ County on the _____ day of _____, 20__
Mail after recording to GRANTEE at _____,
This instrument was prepared by Foodman Hunter & Karres, PLLC,10800 Sikes Place, # 105, Charlotte, NC 28277
2011064100 Barristers Title

Brief Description for the index |

THIS DEED made this _____ day of _____, 2011 by and between

| GRANTOR | GRANTEE |
|---|---|
| First Citizens Bank, as Co-Trustee And BettyLong Hill as Co-Trustee, Successor Trustees of the C. Neil Hill, Sr. Truste U/A dated 9-9-1999 Mailing address: | ZYGOS SEVEN, LLC Mailing address: 8408 Cricket Lake Drive Charlotte, NC  28277 |

The designation Grantor and Grantee as used herein shall include said parties, their heirs, successors, and assigns, and shall include singular, plural, masculine, feminine or neuter as required by context

WITNESSETH, that the Grantor, for a valuable consideration paid by the Grantee, the receipt of which is hereby acknowledged, has and by these presents does grant, bargain, sell and convey unto the Grantee in fee simple, all that certain lot or parcel of land situated in Mecklenburg County, North Carolina and more particularly described as follows

BEGINNING at a point in the northeast margin of Independence Boulevard (U S Highway 74), said beginning point being located at the westernmost corner of that property conveyed to J Walton Hill, Jr and wife, Shirley N Hill by deed recorded in Book 4027 at Page 686 in the Mecklenburg Public Registry, and running thence with the northeast margin of Independence Boulevard right-of-way, N 34-27 w 65 feet 4 inches, to ap oint, thence N 55-37 E 65 feet, 4 inches to a point, thence S 04-27 E 65 feet, 4 inches to a point, thence with the J Walton Hill, Jr and wife, line (now or formerly) S 55-37 w 180 feet to the point or place of BEGINNING

All or a portion of the property herein conveyed DOES NOT include the Grantor's primary residence

EXHIBIT
12

The property hereinabove described was acquired by Grantor by instrument recorded in Book 21990, Page 254, Mecklenburg County Public Registry

A map showing the above described property is recorded in , Mecklenburg
County Public Registry

TO HAVE AND TO HOLD the aforesaid lot or parcel of land and all privileges and appurtenances thereto belonging to the Grantee in fee simple
And the Grantor covenants with the Grantee, that Grantor has done nothing to impair such title as Grantor received, and Grantor will warrant and defend the title against the lawful claims of all persons claiming by, under or through Grantor, other than the following exceptions

Easements and restrictions of record and the lien of the year 2011 ad valorem taxes, which the Grantee herein agrees to assume and pay

IN WITNESS WHEREOF, the Grantor has hereunto set his hand and seal, or if corporate, has caused this instrument to be signed in its corporate name by its duly authorized officers and its seal to be hereunto affixed by authority of its Board of Directors, the day and year first above written

First Citizens Bank, as Co-Trustee

By _Susan E. Jones V.P_       _Betty Long Hill_ (SEAL)
   Susan E. Jones    Vice President    Betty Long Hill, Co-Trustee

                                        _____ (SEAL)

USE BLACK INK ONLY

STATE OF NORTH CAROLINA, _Buncombe_ County
I, the undersigned, a Notary Public of the County and State aforesaid, certify that
_Susan E. Jones_ personally came before me this day and acknowledged that s/he is
Vice President of First Citizens Bank, as, a North Carolina corporation, and that by authority duly given and as the act of such entity, the foregoing instrument was signed in its name on its behalf as its act and deed
Witness my hand and official stamp or seal on _July_, _20_, 2011

My commission expires _June 30, 2016_

_Wanda W. Huber_ Notary Public

The foregoing Certificate(s) of

is/are certified to be correct This instrument and this certificate are duly registered at the date and time and in the Book and Page shown on the first page hereof _____ REGISTER OF DEEDS FOR
COUNTY
By _____ Deputy/Assistant-Register of Deeds

**SEAL-STAMP**

NORTH CAROLINA, Mecklenburg County

I, the undersigned, a Notary Public of Union County and State aforesaid, certify that Betty Long Hill, Co Trustee personally came before me this day and acknowledged the due execution of the foregoing instrument

Witness my hand and official stamp or seal on July 21, 2011

My commission expires 1-3-2015



Barbara A. Wisler _____ Notary Public

The foregoing Certificate(s) of

_____

is/are certified to be correct This instrument and this certificate are duly registered at the date and time and in the Book and Page shown on the first page hereof

_____ REGISTER OF DEEDS FOR

COUNTY

By _____ Deputy/Assistant-Register of Deeds



J  DAVID GRANBERRY
REGISTER OF DEEDS, MECKLENBURG
COUNTY & COURTS OFFICE BUILDING
720 EAST FOURTH STREET
CHARLOTTE, NC 28202

## PLEASE RETAIN YELLOW TRAILER PAGE

It is part of the recorded document, and must be submitted with original for re-recording and/or cancellation

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| Filed For Registration | 07/22/2011 11 00 58 AM |
| Book | RE   26621  Page  152-155 |
| Document No | 2011081566 |
| | DEED   4 PGS    $25 00 |
| NC REAL ESTATE EXCISE TAX | $550 00 |
| Recorder | ELIZABETH DUNN |

**Original has lines**



*2011081566*

FOR REGISTRATION
Fredrick Smith
REGISTER OF DEEDS
Mecklenburg County, NC
2019 JUN 10 02:20:27 PM
BK:33574 PG:782-784
FEE:$26.00
INSTRUMENT # 2019070820

JACKSED



2019070820

## NORTH CAROLINA NON-WARRANTY DEED

Excise Tax: $0

Parcel Identifier No. <u>165-042-24</u>   Verified by _____ County on the ____ day of _____, 20____
By: _____

Mail/Box to: <u>Grantee: 401 Highland Ridge Drive, Myrtle Beach SC 29588 (Mailing Address)</u>

This instrument was prepared by: <u>Geoffrey C. Hemenway, No Title Examination</u>

Brief description for the Index: <u>metes and bounds, E. Independence Blvd</u>

THIS DEED made this _____ day of <u>June</u>, 20<u>19</u>, by and between

| GRANTOR | GRANTEE |
|---|---|
| **Zygos Seven, LLC** | **Zygos Sevens LLC** |
| | **Property Address:** |
| **8408 Circket Lake Drive** | **6149 E. Independence Boulevard** |
| **Charlotte, NC 28277** | **Charlotte, NC 28212** |

Enter in appropriate block for each party: name, address, and, if appropriate, character of entity, e.g. corporation or partnership.

The designation Grantor and Grantee as used herein shall include said parties, their heirs, successors, and assigns, and shall include singular, plural, masculine, feminine or neuter as required by context.

WITNESSETH, that the Grantor, for a valuable consideration paid by the Grantee, the receipt of which is hereby acknowledged, has and by these presents does grant, bargain, sell and convey unto the Grantee in fee simple, all that certain lot or parcel of land situated in the City of <u>Charlotte</u>, _ Township, <u>Mecklenburg</u> County, North Carolina and more particularly described as follows:

**BEGINNING at a point in the northeast margin of Independence Boulevard (US Highway 74), said beginning point being located at the westernmost corner of the property conveyed to J. Walton Hill, Jr. and wife, Shirley N. Hill by deed recorded in Book 4027 at Page 686 in the Mecklenburg Public Registry, and running thence with the northeast margin of Independence Boulevard right-of-way, North 34-27 West 65 feet 4 inches, to a point, thence North 55-37 East 180 feet to a point, thence South 04-27 East 65 feet, 4 inches to a point, thence with the J. Walton Hill Jr. and wife line (now or formerly), South 55-37 West 180 feet to the point or place of BEGINNING.**

NC Bar Association Form No. 7 © 1977, 2002
Printed by Agreement with the NC Bar Association – 1981 - Chicago Title Insurance Company



EXHIBIT

13

The property conveyed herein is not the primary residence of the grantor.
The property hereinabove described was acquired by Grantor by instrument recorded in Book <u>26621</u>, page <u>152</u>

A map showing the above described property is recorded in <u>Map Book</u> , <u>Page</u> .

TO HAVE AND TO HOLD the aforesaid lot or parcel of land and all privileges and appurtenances thereto belonging to the Grantee in fee simple.

The Grantor makes no warranty, express or implied, as to title to the property hereinabove described.

IN WITNESS WHEREOF, the Grantor has duly executed the foregoing as of the day and year first above written.

<u>**ZYGOS SEVEN, LLC**</u>                                         _____(SEAL)
(Entity Name)

By: _____

**Spiro Balaouras**                                               _____(SEAL)
Title: **Manager/Member**

By: _____

Title:                                                             _____(SEAL)

By: _____

Title:                                                             _____(SEAL)

---

SEAL-STAMP   State of North Carolina – County of _____
I, the undersigned Notary Public of the County and State aforesaid, certify that _____ personally appeared before me this day and acknowledged the due execution of the foregoing instrument for the purposes therein expressed. Witness my hand and Notarial stamp or seal this <u>6th</u> day of <u>June</u>_____, 20<u>19</u>.

My Commission Expires:
<u>2-28-2028</u>                                                   Notary Public _____

---

SEAL-STAMP   State of South Carolina - County of <u>HORRY</u>
<u>BRENDA COLLIER</u>_____the undersigned Notary Public of the County and State aforesaid, certify that <u>Spiro Balaouras</u> personally came before me this day and acknowledged that he is the Manager/Member of <u>Zygos Seven, LLC</u>, a North Carolina limited liability company, and that by authority duly given and as the act of such entity, he signed the foregoing instrument in its name on its behalf as its act and deed. Witness my hand and Notarial stamp or seal, this <u>6th</u> day of June, 2019.

My Commission Expires:
<u>2-28-2028</u>                                                   Notary Public _____

---

SEAL-STAMP   State of North Carolina - County of _____

I, the undersigned Notary Public of the County and State aforesaid, certify that _____

_____

Witness my hand and Notarial stamp or seal, this _____ day of _____, 20_.

My Commission Expires:
_____                                                 Notary Public _____

---

NC Bar Association Form No. 7 © 1977, 2002
Printed by Agreement with the NC Bar Association – 1981 - Chicago Title Insurance Company

B3357 - P784

The foregoing Certificate(s) of _____

is/are certified to be correct. This instrument and this certificate are duly registered at the date and time and in the Book and Page shown on the first page hereof.

_____ Register of Deeds for _____ County

By:_____ Deputy/Assistant - Register of Deeds

NC Bar Association Form No. 7 © 1977, 2002
Printed by Agreement with the NC Bar Association – 1981 - Chicago Title Insurance Company

For Registration
Fredrick Smith
Register of Deeds
Mecklenburg County, NC
Electronically Recorded
2021 Mar 19 08:35 AM          RE Excise Tax: $ 0.00
Book: 35822       Page: 372 - 373    Fee: $ 26.00
Instrument Number:  2021053499

*Fredrick Smith*

## NORTH CAROLINA NON-WARRANTY DEED

Excise Tax: $0.00

Parcel Identifier No. 165-042-24 ___ Verified by _____ County on the ___ day of _____, 20___
By: _____

Mail/Box to: Grantee: 401 Highland Ridge Drive, Myrtle Beach SC 29588 (Mailing Address)

This instrument was prepared by: Geoffrey C. Hemenway, No Title Examination

Brief description for the Index: metes and bounds, E. Independence Blvd

THIS DEED made this 18th day of March, 2021, by and between

| GRANTOR | GRANTEE |
|---|---|
| Zygos Sevens LLC | Charlotte Automotive Center Sales LLC |
| | Property Address: |
| 8408 Circket Lake Drive | 6149 E. Independence Boulevard |
| Charlotte, NC 28277 | Charlotte, NC 28212 |

Enter in appropriate block for each party:  name, address, and, if appropriate, character of entity, e.g. corporation or partnership.

The designation Grantor and Grantee as used herein shall include said parties, their heirs, successors, and assigns, and shall include
singular, plural, masculine, feminine or neuter as required by context.

WITNESSETH, that the Grantor, for a valuable consideration paid by the Grantee, the receipt of which is hereby acknowledged, has
and by these presents does grant, bargain, sell and convey unto the Grantee in fee simple, all that certain lot or parcel of land situated
in the City of Charlotte, _ Township, Mecklenburg County, North Carolina and more particularly described as follows:

BEGINNING at a point in the northeast margin of Independence Boulevard (US Highway 74), said
beginning point being located at the westernmost corner of the property conveyed to J. Walton Hill, Jr.
and wife, Shirley N. Hill by deed recorded in Book 4027 at Page 686 in the Mecklenburg Public
Registry, and running thence with the northeast margin of Independence Boulevard right-of-way,
North 34-27 West 65 feet 4 inches, to a point, thence North 55-37 East 180 feet to a point, thence South
04-27 East 65 feet, 4 inches to a point, thence with the J. Walton Hill Jr. and wife line (now or
formerly), South 55-37 West 180 feet to the point or place of BEGINNING.

NC Bar Association Form No. 7 © 1977, 2002
Printed by Agreement with the NC Bar Association – 1981 - Chicago Title Insurance Company

Submitted electronically by "Geoffrey C. Hemenway, Attorney at Law"
in compliance with North Carolina statutes governing recordable documents
and the terms of the submitter agreement with the Mecklenburg County Register of Deeds.



EXHIBIT
14

The property conveyed herein is not the primary residence of the grantor.
The property hereinabove described was acquired by Grantor by instrument recorded in Book <u>33574</u>, page <u>782</u>

A map showing the above described property is recorded in <u>Map Book</u> , <u>Page</u> ,

TO HAVE AND TO HOLD the aforesaid lot or parcel of land and all privileges and appurtenances thereto belonging to the Grantee in fee simple.

The Grantor makes no warranty, express or implied, as to title to the property hereinabove described.

　　IN WITNESS WHEREOF, the Grantor has duly executed the foregoing as of the day and year first above written.

<u>ZYGOS SEVENS LLC</u>　　　　　　　　　　　　　　　_____(SEAL)
　(Entity Name)

By_____　　　　　　　　　_____(SEAL)
　Theresa Finocchio
　Title:  Manager/Member

By: _____　　　　　　　　　_____(SEAL)

　　Title: _____

By: _____　　　　　　　　　_____(SEAL)

　　Title: _____

| SEAL-STAMP | State of North Carolina – County of _____ |
| --- | --- |
| | I, the undersigned Notary Public of the County and State aforesaid, certify that _____ personally appeared before me this day and acknowledged the due execution of the foregoing instrument for the purposes therein expressed. Witness my hand and Notarial stamp or seal this _____ day of _____, 20____. |
| | My Commission Expires: |
| | _____           Notary Public |

| SEAL-STAMP | State of South Carolina - County of <u>Mecklenburg</u> |
| --- | --- |
| | I, <u>Geoffrey Hemenway</u>, the undersigned Notary Public of the County and State aforesaid, certify that <u>Theresa Finocchio</u> personally came before me this day and acknowledged that she is the <u>Manager/Member</u> of <u>Zygos Sevens LLC</u>, a North Carolina limited liability company, and that by authority duly given and as the act of such entity, she signed the foregoing instrument in its name on its behalf as its act and deed. Witness my hand and Notarial stamp or seal, this <u>18th</u> day of <u>March</u>, 20<u>21</u>. |
| | My Commission Expires:　　　　　　　 _____ |
| | <u>September 4, 2025</u>　　　　　　　 Notary Public / Geoffrey Hemenway |

| SEAL-STAMP | State of North Carolina - County of _____ |
| --- | --- |
| | I, the undersigned Notary Public of the County and State aforesaid, certify that _____ _____ |
| | Witness my hand and Notarial stamp or seal this _____ day of _____, 20__. |
| | My Commission Expires: |
| | _____           Notary Public |

NC Bar Association Form No. 7 © 1977, 2002
Printed by Agreement with the NC Bar Association – 1981 - Chicago Title Insurance Company

State of North Carolina
PO Box 29622
Raleigh, NC 27626-0622

PRESORTED
First Class Mail
U.S. Postage
PAID
Raleigh, NC
Permit 2483

Spiro  Balaouras
RE: ZYGOS SEVEN LLC
6149 East Independence Blvd
Charlotte, NC28212



# NOTIFICATION OF REVENUE SUSPENSION

Please be advised that the North Carolina Department of Revenue has suspended the entity identified on the reverse of this postcard for failure to comply with the requirements of North Carolina General Statute § 105-230(a).

Pursuant to N.C.G.S § 105-230(b), "Any act performed or attempted to be performed while the entity is suspended is invalid and of no effect until the entity is reinstated by the North Carolina Department of Revenue pursuant to N.C.G.S. § 105-232."

**In order to be reinstated, please contact the North Carolina Department of Revenue at (877) 919-1819 extension 1120406.** Once you have corrected the deficiency, the North Carolina Department of Revenue will take action to remove the suspension pursuant to N.C.G.S. § 105-232.

Additional contact information may be found at www.dor.state.nc.us.

**October 2017**

## § 105-230.  Charter suspended for failure to report.

(a)     If a corporation or a limited liability company fails to file any report or return or to pay any tax or fee required by this Subchapter for 90 days after it is due, the Secretary shall inform the Secretary of State of this failure. The Secretary of State shall suspend the articles of incorporation, articles of organization, or certificate of authority, as appropriate, of the corporation or limited liability company. The Secretary of State shall immediately notify by mail every domestic or foreign corporation or limited liability company so suspended of its suspension. The powers, privileges, and franchises conferred upon the corporation or limited liability company by the articles of incorporation, the articles of organization, or the certificate of authority terminate upon suspension.

(b)     Any act performed or attempted to be performed during the period of suspension is invalid and of no effect, unless the Secretary of State reinstates the corporation or limited liability company pursuant to G.S. 105-232. However, a suspended entity's state tax filing obligations and the payment of its tax liability is not affected by the suspension, nor does a suspension affect the liability of a responsible person under G.S. 105-242.2, whether the obligation or liability is enforced in the context of a civil or criminal proceeding or otherwise. (1939, c. 158, ss. 901, 902; 1957, c. 498; 1967, c. 823, s. 31; 1969, c. 965, s. 2; 1973, c. 476, s. 193; 1987, c. 644, s. 1; 1989 (Reg. Sess., 1990), c. 1024, s. 19(a); 1993, c. 354, ss. 19, 20; 1998-212, s. 29A.14(l); 2001-387, s. 152; 2018-5, s. 38.10(a).)



EXHIBIT
16

G.S. 105-230                                                                                                    Page 1

• Upload a PDF Filing • Order a Document Online • Add Entity to My Email Notification List • View Filings
• Print a Pre-Populated Annual Report form

# Limited Liability Company

## Legal Name
ZYGOS SEVENS LLC

# Information

**SosId:** 1647257
**Status:** Admin. Dissolved ⓘ
**Date Formed:** 12/21/2017
**Citizenship:** Domestic
**Annual Report Due Date:** April 15th
**Registered Agent:** Balaouras, Spiro

# Addresses

### Mailing
6149 E Independence Blvd.
Charlotte, NC  28212

### Principal Office
6149 E Independence Blvd.
Charlotte, NC  28212

### Reg Office
6149 E Independence Blvd.
Charlotte, NC  28212

### Reg Mailing
6149 E Independence Blvd.
Charlotte, NC  28212

# Company Officials

All LLCs are managed by their managers pursuant to N.C.G.S. 57D-3-20.

### Manager
Spiro  Balaouras
6149 E Independence Blvd.
Charlotte NC  28212



NOTICE TO REGISTERED AGENT:

Under N.C.G.S. Section 55D-30(b), it is the duty of the registered agent to forward this certificate to the business entity at the last known address.

Spiro Balaouras
ZYGOS SEVENS LLC (1647257)
6149 E Independence Blvd.
Charlotte, NC 28212



## State of North Carolina
### Department of the Secretary of State

# CERTIFICATE OF ADMINISTRATIVE DISSOLUTION

I, Elaine F. Marshall, Secretary of State, as mandated by law, do hereby certify that

## ZYGOS SEVENS LLC

has been administratively dissolved pursuant to the procedure set forth in N.C.G.S. Section 57D-6-06 for failure to file an annual report effective as of the date set forth hereunder.

A Limited Liability Company administratively dissolved under N.C.G.S. Section 57D-6-06 may apply to the Secretary of State for reinstatement by complying with the procedure set forth in the N.C.G.S. Section 57D-6-06.

**This the 11th day of October, 2019**

*Elaine F. Marshall*

Elaine F. Marshall
**Secretary of State**



Document Id: C201928427182
https://sosnc.gov



UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

IN RE:

CHARLOTTE AUTOMOTIVE CENTER
SALES, LLC,

    Debtor.

CASE NO.: 22-30043
CHAPTER 11

---

## NOTICE OF HEARING

NOTICE IS GIVEN that First National Bank of Pennsylvania has filed an Amended Motion to Dismiss, to Determine Real Property is Not Property of the Estate and Alternatively for Relief from Stay.  A copy of the Motion accompanies this Notice.

NOTICE IS FURTHER GIVEN that a hearing will be held on Wednesday April 6, 2022 at 9:30 o'clock a.m. at the US Federal Courthouse, 401 West Trade Street, Courtroom 2A, Charlotte, North Carolina. No further notice of this Hearing shall be given.

This the __14__ day of March, 2022.

HUTCHENS LAW FIRM LLP
Attorneys for First National Bank of Pennsylvania

By:_____
    William Walt Pettit
    NC Bar No.: 9407
    6230 Fairview Road, Suite 315
    Charlotte, N.C. 28210
    Telephone: (704) 362-9255
    Email: walt.pettit@hutchenslawfirm.com

8

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

IN RE:

CHARLOTTE AUTOMOTIVE CENTER
SALES, LLC,

Debtors.

CASE NO.: 22-30043
CHAPTER 11

---

## CERTIFICATE OF SERVICE

I, as attorney of record for First National Bank of Pennsylvania hereby certify that on the 14th day of March, 2022, I served a copy of the Amended Emergency Motion to Dismiss, to Determine Real Property is Not Property of the Estate and Alternatively Relief from Stay and Notice of Hearing by either electronic notice in accordance with the local rules or by depositing the same, enclosed in a postpaid, properly addressed wrapper, in an official depository under the exclusive care and custody of the United States Postal Service, said envelope being addressed to all individuals/entities appearing on the Debtor's mailing matrix as attached hereto and as follows:

Charlotte Automotive Center Sales, LLC
1275 S. BC 16 Bus. Hwy.
Stanley, NC 28164

R. Keith Johnson, Esq.
(by ECF)

U.S. Bankruptcy Administrator
Trustee
(by ECF)

John Woodman, Esq.
(by ECF)

HUTCHENS LAW FIRM LLP
Attorneys for First National Bank of Pennsylvania

By: _____
William Walt Pettit
N.C. Bar No. 9407
6230 Fairview Road, Suite 315
Charlotte, N.C. 28210
Telephone: (704) 362-9255
Email: walt.pettit@hutchenslawfirm.com

9

Label Matrix for local noticing
0419-3
Case 22-30043
Western District of North Carolina
Charlotte
Fri Feb 11 12:55:20 EST 2022

Charlotte Automotive Center Sales, LLC
1275 S. NC 16 Bus. Hwy.
Stanley, NC 28164-8822

First National Bank of Pennsylvania
c/o Hutchens Law Firm LLP
6230 Fairview Road, Suite 315
Charlotte, NC 28210-3151

U.S. Bankruptcy Administrator Office
402 W. Trade Street
Suite 200
Charlotte, NC 28202-1673

United States Attorney
227 West Trade Street
Carillon Bldg, Suite 1700
Charlotte, NC 28202-1675

Charlotte Division
401 West Trade Street
Charlotte, NC 28202-1633

Essex Richards
1701 South Blvd.
Charlotte, NC 28203-4727

Estate of Spiros Balaouras
4549 Farm Lake Dr.
Myrtle Beach, SC 29579-6599

First National Bank of Pennsylvania
c/o W. Walt Pettit, Esq.
6230 Fairview Rd., Ste. 315
Charlotte, NC 28210-3151

First National Bank of Pennsylvania
c/o William F. Kirk
1515 Mockingbird Ln., Ste. 4115
Charlotte, NC 28209-1170

Internal Revenue Service
P.O. Box 7317
Philadelphia, PA 19101-7317

Manuel Ahumada
c/o Jeffrey McCraw, Esq.
Crisp Cherry McCraw, PLLC
615 S. College St., Ste. 1430
Charlotte, NC 28202-3354

Mecklenburg County Tax Collector
P.O. Box 31457
Charlotte, NC 28231-1457

North Carolina Department of Revenue
Bankruptcy Unit
P.O. Box 1168
Raleigh, NC 27602-1168

Theresa Finocchio
4549 Farm Lake Dr.
Myrtle Beach, SC 29579-6599

U.S. Securities Exchange
Office of Reorganization
950 East Paces Ferry Road, N.E.
Suite 900
Atlanta, GA 30326-1382

W. Walt Pettit, Esq.
6230 Fairview Rd., Ste. 315
Charlotte, NC 28210-3151

Zygos Seven, LLC
4549 Farm Lake Dr.
Myrtle Beach, SC 29579-6599

Zygos Sevens, LLC
4549 Farm Lake Dr.
Myrtle Beach, SC 29579-6599

(c)R. KEITH JOHNSON
1275 S NC 16 BUSINESS HWY
STANLEY NC  28164-8822

Addresses marked (c) above for the following entity/entities were corrected
as required by the USPS Locatable Address Conversion System (LACS).

R. Keith Johnson
1275 South Hwy 16
Stanley, NC 28164

End of Label Matrix
Mailable recipients    19
Bypassed recipients    0
Total                  19